Argued June 7, affirmed October 13, 1967

## STATE OF OREGON, *Respondent, v.* KENNETH NORMAN BEAVER, *Appellant.*

432 P. 2d 509

*Robert M. Gordon,* Corvallis, argued the cause and filed a brief for appellant.

*Frank D. Knight,* District Attorney, Corvallis, argued the cause for respondent. With him on the brief was J. M. Livingston, Deputy District Attorney, Corvallis.

Before Perry, Chief Justice, and McAllister, O'Connell, Goodwin and Denecke, Justices.

PERRY, C. J.

The defendant Kenneth Norman Beaver was con-

victed of robbery while armed with a dangerous weapon, and appeals.

The facts of the case are as follows:

Defendant was arrested during the early hours of July 8, 1966, on a charge of burglary not in a dwelling, and was lodged in the Corvallis city jail. That same morning he was taken before the district court and there advised by the judge of his constitutional rights. At this time he requested court-appointed counsel and Robert M. Gordon was appointed to represent him. On July 13, 1966, a preliminary hearing was held with his counsel present and defendent was bound over for action by the grand jury. The following day the grand jury of Benton county returned two indictments against defendant—one for burglary not in a dwelling, and the other, the charge of robbery while armed with a dangerous weapon of which he was convicted and appeals.

At 11:00 a.m. on July 15, 1966, defendant was taken before the Circuit Court of Benton County where he was again fully advised of his constitutional rights and Robert M. Gordon was appointed counsel also to represent defendant on the armed robbery charge. Defendant then was arraigned on both charges and entered pleas of not guilty. At about 11:00 p.m. on the evening of July 15, 1966, approximately twelve hours after his arraignment, defendant requested the desk sergeant at the city jail, where he was being held, to contact city police officers Miller and Montgomery and Corporal Winchester and officer Veteto of the Oregon State Police as he had a lot of things he would like to clear up. Officer Montgomery arrived at the city jail about 11:20 p.m. and told the defendant they should wait until Corporal Winchester and

officer Veteto of the Oregon State Police arrived. This was agreeable to the defendant. The state police officers arrived about 12:30 a.m., and the officers and defendant went to the office of the Chief of Police.

Before the defendant was permitted to make any statements, Corporal Winchester stated to the defendant that it was their duty to advise him of his rights and that he had a right to have his attorney present at this interview if he so desired. Defendant simply stated he had talked to his attorney. The defendant thereafter orally set forth the fact that he and another person had planned the robbery and detailed the manner in which it was accomplished. A hearing as to the voluntariness of his statements was held before the trial court out of the presence of the jury. The defendant there testified he had been advised of his rights at the time of arraignment, that he knew of his right to an attorney, and also stated that he instigated the interview and that his statements were voluntary. The trial court found that defendant's constitutional rights had not been invaded, that defendant's statements were entirely voluntary, and the officers were permitted to testify before the jury to the statements made by defendant. The question of the voluntariness of the statements was again submitted to the jury.

The defendant states on this appeal that "The fundamental questions presented on this appeal are whether the defendant was properly apprised of his constitutional rights and whether the confession of defendant Beaver was voluntary."

There is no evidence of the occurrence of any event between the arraignment and the defendant's request to see the officers that indicates any reason for de-

fendant's sudden request. The defendant, therefore, must and does argue that the police are absolutely prohibited from taking statements from a person in custody after he has been indicted and secured the aid of counsel, relying upon *Massiah v. United States*, 377 US 201, 84 S Ct 1199, 12 L ed 2d 246.

The facts in *Massiah* bear no relation to the facts before us in the present case. In *Massiah* the accused was tricked into making incriminating statements. Massiah was motivated to make the statements by police action, not by his voluntary desire. The majority of the court, in speaking of the violation of an accused's Fifth and Sixth Amendment rights under these circumstances quoted with approval Judge Hays' statement in 307 F2d at pp 72-73:

> " 'if such a rule is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse. In this case, Massiah was more seriously imposed upon * * * because he did not even know that he was under interrogation by a government agent.' " *Massiah v. United States*, supra, 12 L ed 2d 246, 250.

The opinion ends with this statement, p. 251:

> "All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial." (Emphasis theirs.)

It seems clear that the court in *Massiah* was not attempting to say that a defendant could not waive any and all of his constitutional rights if motivated by his own desire.

This same issue was before this court in *State v. Atherton,* 242 Or 621, 410 P2d 208, cert. den. 384 US 1025, 86 S Ct 1982, 16 L ed 2d 1030. We stated on p. 628:

"* * * Once it is shown that an accused knew what he was doing when he talked to the police, and that he did so with full knowledge of his rights, he ought to be just as responsible for his decision to talk as he is for his decision to commit the crime in the first place. See concurring opinion of Traynor, J., in People v. Garner, 57 Cal2d 135, 156, 18 Cal Rptr. 40, 53, 367 P2d 680, 693 (1961), cert. denied 370 US 929, 82 S Ct 1571, 8 L Ed2d 508 (1962)."

This statement is in full accord with the majority holding in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed 2d 694, where that court stated:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. * * *"
384 US 436, 478, 86 S Ct 1602, 1630, 16 L. ed 2d 694, 726.

There is nothing in any of the evidence before us that leads us to believe this defendant did not voluntarily, willingly, intentionally and of his own free

will, without even a suggestion from the officers, make the statements to the officers.

The judgment is affirmed.

DENECKE, J., specially concurring.

The skeletal facts are that after defendant was advised of his rights, including the right to have counsel present, and while defendant was represented by counsel, the defendant told the police he wanted to talk and he did, without the presence of counsel. The majority holds that statements so made are admissible.

In *State v. Atherton*, 242 Or 621, 410 P2d 208 (1966), this court held admissible a statement obtained by interrogation without the presence of counsel from a defendant represented by counsel. The majority reasoned that by responding to the interrogation the defendant expressed his waiver of his right to counsel and his right to remain silent. Mr. Justice SLOAN and I dissented.

In my opinion the present case can correctly be distinguished from *State v. Atherton*, supra. In that case the statement was obtained by interrogation; in this case the conversation with the police was initiated by the defendant. The defendant so admitted.

The principal basis of *Escobedo* and *Miranda*, etc., is prophylactic; i.e., to prohibit certain police practices. As shown by my dissent in *State v. Atherton*, supra, I do not believe that the police should be permitted to interrogate a prisoner who has an attorney without the attorney's presence. I do not believe that there is any reason to prohibit the police from listening to a prisoner who wants to talk.