Argued and submitted July 6, affirmed November 29, petition for rehearing denied December 28, 1983

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## HOWARD CLIFTON SPARKLIN,
*Petitioner on Review.*

### (CA A21337; SC 29421)

672 P2d 1182

John Daugirda, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Rex Armstrong, Portland, Robert C. Welsh, Los Angeles, California, and Ronald K.L. Collins, Salem, filed amicus curiae brief for the American Civil Liberties Union Foundation of Oregon, Inc.

ROBERTS, J.

Linde, J. concurred and filed an opinion in which Lent, J. joins.

## ROBERTS, J.

The question is whether defendant's request for an attorney at arraignment bars all police interrogation undertaken without the presence of counsel, unless defendant volunteers information on his own initiative and not in response to questioning, and statements are otherwise voluntarily obtained.

Defendant was arrested in Eugene after security personnel at a retail store notified police of their suspicion that defendant and his companion, Taylor, purchased merchandise with a stolen credit card. The credit card was issued to Steven Mansell. The next morning defendant was arraigned on a forgery charge. At the arraignment defendant requested and was provided with an attorney. Portland authorities had information which implicated defendant in an incident in which Steven Mansell had been beaten and his automobile and credit cards stolen. That evening, without notice to his attorney and without providing defendant an opportunity to consult with his attorney, two Portland detectives interrogated defendant about the assault on Mansell and a factually unrelated murder and robbery in Portland of a man named Davidson for which defendant was tried and convicted in this case. Miranda[1] warnings preceded the questioning. Defendant signed a waiver of his rights. His confession to participation in the Davidson murder gained at this interrogation session was used against him at trial. It is from this conviction that defendant appeals.

Defendant seeks to suppress his confession as the product of compelled self incrimination, and as evidence obtained in the absence of an attorney at a time when he had the right to an attorney's presence and advice.

■ Defendant suggests first that the Miranda warnings given him in advance of interrogation are inadequate to protect his article I, section 12 rights.[2] He urges us to adopt more detailed warning unique to our own constitutional guarantee.

---

[1] *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 LEd 2d 694 (1966).

[2] Article I, section 12 provides:

"No person shall be put in jeopardy twice for the same offence [sic], nor be compelled in any criminal prosecution to testify against himself."

As early as *State v. Andrews,* 35 Or 388, 391-92, 58 P 765 (1899) we were of the opinion that some form of advice of rights and warning was required before incriminating evidence derived from defendant's preliminary examination before the justice of the peace could be used against defendant at his trial.[3] The requirement does not surface again in our jurisprudence until *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965) where we imposed a requirement for warnings prior to custodial interrogation. In *Neely* these warnings were perceived as a federal constitutional requirement in response to *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 LEd 2d 246 (1964) and *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 LEd 2d 977 (1964) and we did not examine the state constitutional guarantee.[4]

Recently in *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983), after examining the federal *Miranda* warnings, we stated:

> "The Oregon Constitution similarily guarantees the right not to be compelled to testify against oneself in a criminal prosecution. Or Const, Art I, § 12. Like the United States Supreme Court, this court is called upon from time to time to specify the procedure by which a guarantee is to be effectuated. Such specifications are not the same as interpretations of the guarantee itself, that is to say, they may not always and in all settings be the only means towards its effectuation but may be adapted or replaced from time to time by decisions of this court or by legislation in the light of experience or changing circumstances." 295 Or at 645.

In *Mains* we required the authorities to give additional warnings to a represented defendant who, at the state's instance, submitted to a psychiatric examination and chose to proceed without the presence of his attorney.

---

[3] In *State v. Andrews,* 35 Or 388, 391-92, 58 P 765 (1899) the court cited to article I, section 12 and to the Code of Criminal Procedure (Hill's Ann Laws §§ 1594 and 1598) which sets forth the procedure by which statements could be obtained from the defendant. The defendant had to be informed of his right not to make a statement before he could be examined about the charge at the preliminary hearing.

[4] In the meantime we had upheld the admission of custodial confessions despite the absence of self incrimination warnings in three cases, *State v. Nunn,* 212 Or 546, 321 P2d 356 (1958); *State v. Henderson,* 182 Or 147, 184 P2d 392, 186 P2d 519 (1947) and *State v. Layton,* 174 Or 217, 148 P2d 522, *cert den* 323 US 728, 65 S Ct 64, 89 LEd 584 (1944). In none of these cases, however, did defendant assert his constitutional privilege against self incrimination.

In this case, we decline the alternative warnings proposed by counsel on practical grounds. At least as long as the text of the federal *Miranda* warnings remains the law, we think that the convenience of a single text exceeds any gain from improving that text.

Defendant asserts that his request for an attorney at arraignment activated both his derivative right to the presence of an attorney to prevent compelled incriminating disclosures, rights found in article I, section 12 and the federal fifth amendment, and his substantive right to the presence of an attorney at all confrontations with the police after a formal charge is filed against him, the guarantee of article I, section 11 and the federal sixth amendment.

■ We begin with defendant's state constitutional claims.[5] Article I, section 12 forbids the state from compelling a person to testify against himself. It is compulsion which is proscribed, and we have recognized that any custodial setting, that is, one in which an individual is not free to leave, is, in the words of Justice Tanzer, "inherently coercive." *State v. Roberti*, 293 Or 59, 65, 67, 644 P2d 1104, former opinion withdrawn, 293 Or 236, 646 P2d 1341 (1982). An attorney's presence at custodial interrogations is one way to secure the right to be free from compelled self incrimination. For this reason we require the police to inform a detained person that he may terminate questioning at any time and that he may have an attorney to advise him before he speaks. When the police honor these rights if defendant chooses to assert them, the coercive atmosphere of police interrogation is to some degree dispelled.

We do not regard this defendant's request for an attorney at arraignment as an assertion of his right to be free from compelled self incrimination. The need for an attorney's presence at interrogation arises when the state may elicit from defendant admissions or confessions. At arraignment defendant is not confronted with an atmosphere of coercion, nor does anyone seek to gain admissions from him. The request for an attorney here is a matter of routine, and without some more explicit request by defendant we do not view it as a

---

[5] Linde, *First Things First — Rediscovering the States' Bills of Rights*, 9 U Balt L Rev 379 (1980); Carson, *"Last Things Last": A Methodological Approach to Legal Arguments in State Courts*, 19 Willamette L Rev 641 (1983).

request for an attorney's presence at subsequent interrogations.

In this case the interrogating officers knew that defendant was represented by an attorney on the forgery charge. In New York interrogation with such knowledge is forbidden. The New York rule, grounded in the state's constitutional and statutory guarantees of the privilege against self incrimination, the right to counsel and due process of law, prohibits interrogation of any person taken into custody, whether as an accused, a suspect or a witness, if the police know he has an attorney or if they know an attorney wishes to speak with him. *See People v. Hobson,* 39 NY2d 479, 348 NE2d 894, 384 NYS2d 419 (1976); *People v. Arthur,* 22 NY2d 325, 239 NE2d 537, 292 NYS2d 663 (1968). The only way a suspect can waive the right to an attorney at interrogation is in the presence of counsel.

We examined the New York rule in *State v. Haynes,* 288 Or 59, 602 P2d 272 (1979), *cert den* 446 US 945, 100 S Ct 2175, 64 LEd 2d 802 (1980). In *Haynes,* the police knew defendant's attorney was attempting to contact him. They did not inform defendant of this and obstructed the attorney's efforts to make contact with defendant. They obtained from defendant a waiver of his right to an attorney for interrogation. We held that no waiver could be adequate unless defendant knew his attorney wanted to see him. However, we did not interpret article I, section 12 to require that any waiver of the right to have an attorney at interrogation must be made only in an attorney's presence. 288 Or at 72. We noted in *Haynes* that a requirement that an attorney be present at any waiver would "obviate the recurring problems of proof" that accompany cases in which the state attempts to rely on admissions or confessions gained from custodial interrogations. There are other ways to address these proof problems, however.[6] We hold that defendant's article I, section 12 rights

---

[6] For example, in this case there is a factual dispute whether defendant asserted his right to silence during interrogation. The trial court ruled adversely to defendant on this point after hearing testimony from the two police officers. An audio or video tape of the full interrogation session which includes the reading of *Miranda* warnings and the waiver by defendant if one occurs would greatly facilitate fact finding on these issues. The admissibility of statements derived from custodial interrogation most frequently rests on validity of the waiver, a legal determination to be made from the facts found by the trial court. Most police facilities have access to some form of taping

were not violated when the police sought his waiver and interrogated him.

**3.** Defendant premises his federal constitutional claim on *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981). He asserts that his request for an attorney at arraignment was an invocation of his federal fifth amendment right not to be "compelled * * * to be a witness against himself," a right he asserts can be waived only if the state proves the "necessary fact that the accused, not the police, reopened the dialogue with the authorities," 451 US at 486 n 9, and the statement is otherwise voluntarily given.

In *Edwards* defendant requested an attorney after the police advised him of his rights preparatory to interrogating him.[7] The police resumed interrogation the next day without complying with his request. The court held:

"* * * [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 US at 484-85. (Footnote omitted.)

Had Sparklin made a similar request in anticipation of, or during, interrogation he would have been entitled to the minimum protections afforded by the fifth amendment, the cessation of all interrogations until an attorney was made available to him.[8] However, as explained above, his request for

---

device. The fact that the police choose not to tape a session weighs against the state when it seeks to prove that the waiver was knowing, voluntary and intelligent.

[7] The interrogation took place before Edwards's arraignment but after the filing of a complaint against him. The court did not consider in that case what effect, if any, the appointment of counsel would have had on the standards for waiver of a person's sixth amendment right. 451 US at 480 n 7.

[8] Compare *State v. Taylor,* 56 Or App 703, 643 P2d 379 (1982). The Court of Appeals reversed Taylor's conviction for first degree assault and unlawful use of an automobile for his part in the Mansell incident. After advice of rights at his arrest Taylor refused to talk and asked for an attorney. No attorney was provided him and he was later interrogated about his participation in the Mansell assault. Pursuant to *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 LEd 2d 378 (1981), the Court of Appeals suppressed the incriminating statements gained at this interrogation.

an attorney at arraignment was not an invocation of his right not to be questioned without the advice of an attorney. We find no violation of defendant's fifth amendment rights.

■　　　Defendant's next argument is premised upon his article I, section 11 right "to be heard by * * * counsel" and its federal sixth amendment counterpart. The defendant argues that his substantive right to counsel under both the sixth amendment and article I, section 11 begins with the filing of the charging instrument.[9]

The state had already initiated a "criminal prosecution" against defendant and as a result his right to an attorney under article I, section 11 arose independently of any invocation of that right by defendant in the course of police interrogation.[10] In *State ex rel Russell v. Jones,* 293 Or 312, 647 P2d 904 (1982) we held that the right "to be heard by * * * counsel" secured by article I, section 11 of the Oregon Constitution required the state to notify the attorney representing the defendant on that charge that it desired to interrogate the defendant and to provide the attorney an opportunity to be present at a presentence psychiatric interview. In *State v. Mains, supra,* the state conducted a psychiatric examination of a defendant after providing his attorney notice and an opportunity to attend. We held, however, that this was not enough where the defendant chooses to proceed without an attorney. In such cases the state must make certain enumerated disclosures to defendant regarding his right to be free from compelled self incrimination. 295 Or at 645.

---

[9] We are not presented in this case with the question whether the article I, section 11 right to an attorney may attach at any time earlier than the federal right.

There can be no question that the right to an attorney during the investigative stage is at least as important as the right to counsel during the trial itself. Where once the primary confrontation between state and individual occurred at the trial, now "the point at which the individual first confronts the amassed power of the state has moved back in the process from trial to the police stage." Note, An Historical Argument for the Right to Counsel During Police Interrogation, 73 Yale LJ 1000, 1041 (1964).

When Article I, section 11 is implicated "[t]he right of an accused under Article I, section 11, to be heard by himself or counsel, * * *, is guaranteed in 'all criminal prosecutions,' not limited to 'critical stages' of such prosecutions." *State ex rel Russell v. Jones, supra,* 293 Or at 321 (Lent, J. concurring).

[10] This is the question we did not reach in *State v. Haynes,* 288 Or 59, 74 n. 7, 602 P2d 272 (1979), whether, after a "criminal prosecution" has formally begun with the bringing of a charge, a defendant may, in the absence of an attorney, be asked to waive the right to an attorney and answer questions.

These procedures were required not because the defendant requested an attorney during the interrogation, nor because of characteristics unique to the psychiatric examination. Rather, they were mandated by Oregon constitutional guarantees which provide that once a person is charged with a crime he or she is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant. This is so whether or not defendant specifically requests an attorney's presence at the interrogation. As one commentator explains:

> "The constitutional right to counsel is meant to counteract the handicaps of a suspect enmeshed in the machinery of criminal process. Once accused has sought the safeguard of counsel, it is unfair to let skilled interrogators lure him from behind the shield into an unequal encounter. To permit officers to question a represented suspect in the absence of counsel encourages them to undermine the suspect's decision to rely upon counsel. Such interrogation subverts the attorney-client relationship." (Footnotes omitted.) Note, Interrogation and the Sixth Amendment: The Case for Restriction of Capacity to Waive the Right to Counsel, 53 Ind LJ 313, 315 (1977-1978).

■ Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend. No waiver of that right may occur until defendant has consulted with his attorney. In the smallest civil matter an attorney and his or her investigator are restricted in their contact with a represented party.[11] We can certainly require no less of prosecutors or police in criminal matters. A defendant may, of course, volunteer statements, but this must be on his own initiative and not in response to questioning. *See State v. Beaver,* 248 Or 101, 432

---

[11] DR7-104 Communicating With One of Adverse Interest.

"(A) During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

P2d 509 (1967). After consultation with his attorney the accused may choose to proceed alone. We have outlined elsewhere the necessary disclosures in such a case. *State v. Mains, supra,* 295 Or at 645.

We are left then with the question of the scope of the article I, section 11 right to an attorney. Defendant argues that representation by an attorney on one charge insulates defendant from police questioning regarding any crime for which he may be a suspect, whether or not it stems from the incidents surrounding the crime charged. The question evokes consideration of the purpose an attorney serves in defense of one accused of a crime.

The development of the right to an attorney at pre-trial confrontations between the state and the individual reflects a concern for the preservation of the fairness of trial and counsel's effectiveness in defending against the charge.[12] Interrogations, like line-ups, polygraph sessions and psychiatric examinations, are investigative tools by means of which the state builds its case against the accused. An attorney's presence at these encounters may serve to forestall the use of impermissibly derived evidence at trial.

■■ Yet the article I, section 11 guarantee of an attorney, like the federal counterpart, remains focused on the trial; that is, it is the protection of rights to which a defendant is entitled in the trial itself which the guarantee is intended to preserve. In *State v. Newton,* 291 Or 788, 802-03, 636 P2d 393 (1981), the plurality opinion observed, in the language of the federal analysis:

> "The right to counsel attaches to certain evidence-gathering processes which are deemed 'critical stages' of the prosecution as an extension of a defendant's right to representation by counsel in court. Any pre-trial adversarial contact of the state

---

[12] Throughout this opinion, we use the words counsel and attorney as these terms are defined in ORS 9.310. That statute provides:

> "An attorney is a person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof. An attorney, other than the one who represents the party in the written proceedings, may also represent a party in court, or before a judicial officer, in which case he is known as counsel, and his authority is limited to the matters that transpire in the court or before such officer at the time."

This statute, of course, has no relevance to the scope or meaning of the constitutional right "to be heard by * * * counsel." Or Const Art I, § 11.

and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel."

It is the fairness of the "criminal prosecution" which counsel's presence helps to ensure.[13] For this reason the article I, section 11 right to an attorney is specific to the criminal episode in which the accused is charged. The prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes.

■     Defendant's federal sixth amendment rights are not so clearly defined but appear to be of equal scope. *Estelle v. Smith,* 451 US 454, 101 S Ct 1866, 68 LEd 2d 359 (1981) indicates that the federal guarantee of the right to counsel requires that when an accused has an attorney the state must notify the attorney and provide defendant an opportunity to consult with his attorney before interrogations. In *United States v. Henry,* 447 US 264, 100 S Ct 2183, 65 LEd 2d 115 (1980), the court suppressed statements made by an incarcerated defendant to a jailhouse informant whom police had planted in defendant's cell block. The court relied primarily on *Massiah v. United States, supra.* The court did not address whether the police must notify counsel before eliciting incriminating statements from a represented defendant in custody. It cited, however, to Disciplinary Rule 7-104(A)(1) of the Code of Professional Responsibility, (*see* note 11, *supra*) 447 US at 275, n. 14.

The Supreme Court has not addressed the question whether representation for one crime prohibits interrogation about factually unrelated crimes. A number of states have examined the admission of statements derived from police interrogation without an attorney present when the defendant has an attorney for a factually unrelated charge. With the exception of New York,[14] these states hold that the police run

[13] As we noted in *State ex rel Russell v. Jones,* 293 Or 312, 315, 647 P2d 904 (1982) "The term 'criminal prosecution' includes sentencing, a stage at which a judicial decision affecting a defendant's future liberty is made."

[14] New York once recognized a distinction between related and unrelated charges as it affects the right to an attorney, *People v. Taylor,* 27 NY2d 327, 266 NE2d 630, 318 NYS2d 1 (1971), but the distinction was expressly overruled in *People v. Rogers,* 48 NY2d 167, 397 NE2d 709, 422 NYS2d 18 (1979).

the risk of violating defendant's substantive right to an attorney when they interrogate him concerning the crime for which he has an attorney, but they do not interfere with this right when the interrogation concerns factually unrelated crimes.

In *State v. Derrico,* 181 Conn 151, 434 A2d 356 (1980) the court ruled:

> "The fact that the defendant had been represented by counsel in a different proceeding did not, however, give notice to the police that an appearance had been entered by the defendant's counsel in connection with the charges then under investigation. * * * The defendant's arraignment in the prior matter was genuinely unrelated and neither a sham nor a pretext for investigation of the [present crime]. The police were entitled to proceed with the interrogation upon receiving the defendant's valid waiver of his *Miranda* rights." 181 Conn at 168.

In California, once criminal charges have been filed and defendant obtains an attorney, he acquires an "absolute, unwaivable right to counsel's presence at any subsequent police interrogation." *People v. Boyd,* 86 Cal App 3d 54, 60, 150 Cal Rptr 34, 37 (1978). The rule applies to crimes for which defendant is formally charged and crimes which are related to those charged. One California court has held that it does not apply when formal charges to the crime under interrogation have not yet been filed or when interrogation concerns a crime unrelated to the crime on which defendant already has an attorney. *People v. Mack,* 89 Cal App 3d 974, 152 Cal Rptr 883 (1979). *Boyd* makes clear that it is the factual similarity between the crimes and not the charges filed which determines whether the crimes are "related." In *Boyd* defendant was arraigned on a burglary charge arising out of suspicion that he stole property and then set a building on fire to hide the theft. Admissions derived from an interrogation about the fire in the absence of an attorney were suppressed because the two crimes of burglary and arson involved the same premises, the same victims and were closely connected in time. 86 Cal App 3d at 61, 150 Cal Rptr at 38. *Boyd* notes that in *Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 LEd 2d 424 (1977) a sixth amendment case, defendant's right to an attorney was implicated even though he had been arraigned and an attorney appointed on a different offense relating to the same victim. *Id.*

In *State v. Clawson,* 270 SE2d 659 (W Va 1980) defendant had an attorney appointed on a New Jersey rape charge. He was interrogated regarding two West Virginia murders without the presence of that attorney. The court first observed that most courts hold that representation by an attorney for an unrelated charge does not preclude the police from seeking a waiver of the right to an attorney without notice to the attorney for interrogation about an unrelated criminal episode. 270 SE2d at 668. The court examined why there should be a difference in treatment in the two circumstances.

"There is a need for such a differentiation. Where the defendant has sought or obtained counsel on a pending charge, it is apparent that he has initially exercised his right to counsel and waiver at that stage is not an issue. If *Massiah* and *Miranda* and their progeny are to have any meaning, the State should not be permitted to make subsequent overtures to the defendant to see if he wishes to abandon his already exercised right to counsel. To permit the State to subsequently test the defendant's resolve to have counsel by importuning him to waive counsel is to enable the State to wear away at the defendant in the hope of having him recant his earlier decision to have counsel.

"This restriction does not mean that the defendant may not voluntarily decide to recant his right to counsel but any reconsideration must occur independently of overtures from the State. * * *

"On the other hand, where counsel has been obtained on an unrelated charge, this fact has no particular bearing on whether the defendant is willing to waive counsel on the present charge. It cannot be said from either a constitutional or ethical standpoint that because a defendant has counsel on one criminal charge, the State is thereby foreclosed from making contact with the defendant on another matter. * * * The essential point is whether the defendant desires to have counsel on the present charge or whether he will voluntarily waive that right.

"This decision is one that necessarily relates to the defendant's state of mind in regard to the present charge and we cannot conclude that an earlier decision to have counsel on an unrelated charge can be automatically assumed on the subsequent charge. Moreover, the State is still required before interrogation to give the defendant his *Miranda* warnings so

that he may at this point make the decision to have counsel on the separate charge." (Citations omitted.) 270 SE2d 669.

*Accord, Miller v. State,* 403 SO2d 1017 (Fla App 1981); *Rutledge v. State,* 263 Ark 781, 567 SW2d 283 (1978); *State v. Richmond,* 114 Ariz 186, 560 P2d 41 (1976), *cert den* 433 US 915, 97 S Ct 2988, 53 LEd 2d 1101 (1977); *State v. Stumes,* 90 SD 382, 241 NW2d 587 (1976); *State v. Patterson,* 288 NC 553, 220 SE2d 600 (1975).

We agree with the trial court that defendant's waiver of his self incrimination rights was knowing, intelligent and voluntary. Because defendant was represented by an attorney for the crimes against Steven Mansell, interrogation on this subject was improper and no waiver of this right can be given effect. However, with regard to the unrelated Davidson case, defendant's waiver is valid. This is not a situation where a waiver was obtained by exploitation of illegal conduct.

In summary, we hold that defendant did not invoke his article I, section 12 or fifth amendment rights to be free from questioning when he requested an attorney at his arraignment for forgery. His subsequent waiver of his right to silence and to an attorney was therefore valid. We also hold that the state is not prohibited from seeking a waiver from defendant without notice to his attorney where defendant is represented by an attorney on a charge factually unrelated to the events about which defendant is to be interrogated.

The decision of the Court of Appeals is affirmed. The minimum sentence for the felony murder charge is vacated. *State v. Macy,* 295 Or 738, 671 P2d 92 (1983) and *State v. Shumway,* 291 Or 153, 630 P2d 796 (1981).

**LINDE, J.,** concurring.

I concur in almost all of the Court's discussion of the two separate constitutional premises involved. It makes clear that respect for a suspect's right to counsel is independent of the elements of custody and compulsion or inducement that trigger protection of the right against self-incrimination, and that it forecloses questioning or otherwise obtaining evidence from a suspect by consent in a matter in which he is represented by counsel unless he consults counsel before consenting. But I have misgivings about a test that makes the admissibility of evidence depend on whether the inquiries to

which he consented without consultation with counsel concerned the same or a different criminal episode.

What makes the distinction appear plausible in this case is that a defendant jailed in one city on the charge on which he had legal counsel confessed to an apparently unrelated crime in another city, in response to questions by officers from that city. But the distinction is likely to prove difficult to administer when any of these factors is missing, when officers from the same or a closely associated jurisdiction question a suspect about activities related in time or place, by the identity of the victim, or by the repetition of similar unlawful acts. This is illustrated by the cases under such a test reviewed by the New York Court of Appeals when it abandoned the test in *People v. Rogers,* 48 NY2d 167, 422 NYS2d 18, 397 NE2d 709 (1979).

Future cases will require scrutiny of the notion that a defendant has an attorney on one charge yet has none on another potential charge about which he is questioned. Again, that notion may appear plausible when one is accustomed to assuming that defendants are represented by counsel appointed by a court for a specific purpose. It is far less plausible when a retained attorney appears to represent an accused and look after his interests in the investigatory stages of the criminal process. Yet we must guard against letting such a difference enter into a rule protecting the right to counsel. The appointment of counsel is designed to protect exactly the same rights for which the constitution guarantees the right to retain counsel. In a rule governing the questioning of suspects, therefore, the test whether the suspect is represented by an attorney must be the same whether the attorney is appointed or retained; it is whether the officers are on notice that the suspect's attorney reasonably would regard protection of the suspect's rights in the matter under investigation to fall within his professional responsibility. The obvious precaution is to ask before proceeding.

Lent, J., joins in this concurring opinion.