Argued and submitted June 3, 2009, affirmed March 3, 2010

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## JOHN RICHARD DAVIS,
*Defendant-Respondent.*

Douglas County Circuit Court
06CR1271FE; A138968

227 P3d 204

Paul L. Smith argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Christina M. Hutchins, Senior Assistant Attorney General.

David A. Hill argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

---

* Brewer, C. J., *vice* Edmonds, P. J.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

The state appeals an order suppressing statements that, the trial court found, were obtained from defendant in contravention of his right to counsel. We affirm.

We ascertain the relevant facts, which are undisputed, from testimony at the hearing on the motion to suppress. Defendant retained counsel after a Roseburg police detective launched an investigation into allegations that defendant had sexually abused his stepdaughter. In a letter dated December 31, 2003, defendant's counsel informed the detective of the representation, invoked defendant's right to counsel and right to remain silent, and instructed the detective to contact defendant's counsel if the detective wished to interview defendant. The letter stated:

> "Please do not talk to [defendant] except through me. If you need to do an interview I will be happy to help arrange it."

The state concedes that the letter communicated defendant's intention to invoke his right to remain silent and right to counsel: "[The detective] knew that defendant had retained counsel and did not wish to speak with the police without counsel present." Put differently, the detective understood that defendant retained counsel for the sexual abuse investigation and did not want to talk to the detective about that investigation without counsel being present.

The detective continued his investigation without contacting defendant. But eight months later, in August 2004, the stepdaughter told the detective that she and defendant had made "incidental contact" via an online instant messaging service. The detective intentionally disregarded the letter that defendant's attorney had sent eight months earlier and arranged for what he called "pretext communications" between the stepdaughter and defendant. To accomplish those "pretext communications," the detective installed instant messaging software on his computer, invited the stepdaughter to his office to set up her account on his computer, and "started having [the stepdaughter] come in in the evenings a couple of days a week so [that the detective] could

supervise contact between [the stepdaughter and defendant]" via the instant messaging service. The detective explained:

"[I] developed what was going to be [the stepdaughter's] persona, in other words, a somewhat fictional account of what was going on in her life at that time that I felt would facilitate conversation between her and [defendant] and put [defendant] at ease. And also most of the chat that went on between them it was [the stepdaughter and defendant] talking and just kind of making small talk, but at times *I did direct [the stepdaughter] to say certain things that I thought were, well, probative to my investigation.*"

(Emphasis added.) During cross-examination, the detective further elaborated on the pretext communications:

"I wouldn't say I controlled [the stepdaughter]. I set a basic framework by which she would work with them, but most of this was her chatting with [defendant], but *I set the framework, and then in some of these really important questions that were germane to the case, those were me.*"

(Emphasis added.) The pretext communications took place over the Internet and on the phone for nine months, from August 2004 through April 2005. The detective was successful: He elicited incriminating statements from defendant. Then, the detective relied on those statements in an affidavit for a search warrant. He obtained the search warrant and found further incriminating evidence on execution of the search warrant. Ultimately, defendant was indicted on charges of sexual abuse, ORS 163.427; sodomy, ORS 163.405; rape, ORS 163.375; and contributing to the sexual delinquency of a minor, ORS 163.435.

Defendant filed a pretrial motion to suppress all statements that he made during the "pretext communications" between August 2004 and April 2005, and all evidence derived from those statements. Defendant also moved to controvert the search warrant affidavit, ORS 133.693(2), and suppress evidence obtained in the execution of the resulting search warrant. Defendant argued that suppression was necessary because the state obtained the statements in contravention of defendant's constitutional rights protected by

Article I, sections 11 and 12, of the Oregon Constitution[1] and by the Fifth and Sixth Amendments to the United States Constitution,[2] and that the search warrant was derived from those illegally obtained statements. The state responded that the detective's actions did not violate defendant's constitutional rights because the statements were obtained prior to defendant's indictment and at a time that defendant was neither in custody nor under compelling circumstances. The trial court granted defendant's motion to suppress all statements that he made and all evidence derived from those statements, based on a violation of defendant's right to counsel and his right to remain silent under Article I, sections 11 and 12, of the Oregon Constitution.

The state appeals and renews its arguments from the trial court. ORS 138.060(1)(c).[3] We review the trial court's order for legal error. *See State v. Dinsmore*, 342 Or 1, 10, 147 P3d 1146 (2006) (so reviewing). Because we resolve this case under the state constitution, we do not reach any issues under the federal constitution. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) ("The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim.").

■   We ultimately conclude that the police officer's "pretext communications" violated defendant's right to remain silent. However, we start by explaining the policies behind the right to counsel to set context for the right to remain silent. We do that because those two constitutional rights are interrelated. *See State v. Randant*, 341 Or 64, 70, 136 P3d 1113 (2006) (discussing one facet of the right to counsel "as a

---

[1] Article I, section 11, provides, in pertinent part: "In all criminal prosecutions, the accused shall have the right * * * to be heard by * * * counsel."

Article I, section 12, provides, in pertinent part: "No person shall * * * be compelled in any criminal prosecution to testify against himself [or herself]."

[2] The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person * * * shall be compelled in any criminal case to be a witness against himself [or herself]."

The Sixth Amendment to the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his [or her] defense."

[3] ORS 138.060(1)(c) provides: "The state may take an appeal from the circuit court to the Court of Appeals from: An order made prior to trial suppressing evidence."

'derivative right' to protect against involuntary confessions"). The right to counsel is expressly guaranteed by Article I, section 11, which provides, "In all criminal prosecutions, the accused shall have the right * * * to be heard by * * * counsel." "It is fairness of the 'criminal prosecution' which counsel's presence helps to ensure." *State v. Sparklin*, 296 Or 85, 95, 672 P2d 1182 (1983). Even though the right to counsel applies to "all criminal prosecutions," the policy behind extending the right to counsel in a criminal proceeding to points in time before trial is consistent with that objective of preserving fairness:

> " 'Any pre-trial adversarial contact of the state and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel.' "

*Sparklin*, 296 Or at 94-95 (quoting *State v. Newton*, 291 Or 788, 802-03, 636 P2d 393 (1981)).

Consistently with that statement in *Sparklin*, the Supreme Court held that the right to counsel arises before charges have been filed when a person is taken into formal custody by the police on a potential criminal charge. *State v. Spencer*, 305 Or 59, 74, 750 P2d 147 (1988). In *Spencer*, the defendant was arrested on suspicion of DUII and asserted his right to counsel before he submitted to a breath test. *Id.* at 74-75. For two reasons, the court held that the defendant had a right to advice from counsel under Article I, section 11, before submitting to a breath test. *Id.* First, upon arrest, the arrestee is "confronted with the full legal power of the state." *Id.* at 74. Second, the court observed, "There can be no question that the right to an attorney during the investigative stage is at least as important as the right to counsel during the trial itself." *Id.* at 73.

Together, *Sparklin* and *Spencer* illustrate that the constitutional right to counsel *may* arise at any time that an individual's uncounseled actions would undermine the right

to assistance of counsel at trial. *Sparklin* states that the policy behind the right to counsel is applicable during a criminal investigation:

> "The constitutional right to counsel is meant to counteract the handicaps of a suspect enmeshed in the machinery of criminal process. Once accused has sought the safeguard of counsel, it is unfair to let skilled investigators lure [the accused] from behind the shield into an unequal encounter. To permit officers to question a represented suspect in the absence of counsel encourages them to undermine the suspects' decision to rely upon counsel. Such interrogation subverts the attorney-client relationship."

296 Or at 93. In *Spencer*, the court applied that policy to a precharge invocation of the right to counsel, by holding that the defendant's post-arrest but precharge invocation of his right to counsel was effective. Thus, even though the text of the constitutional right to counsel is limited to "all criminal prosecutions," the right to counsel can be invoked prior to the criminal prosecution, and applied to events that would render the right to counsel meaningless during the criminal prosecution.

The right to remain silent is similar. Article I, section 12, provides: "No person shall * * * be compelled in any criminal prosecution to testify against himself [or herself]." That right may be in jeopardy when a person becomes the focus of a criminal investigation, because a criminal defendant's out-of-court statements may be admissible evidence. It is well established that a person's right to remain silent arises before trial when that person is in full custody or in a setting that judges and law enforcement officers would recognize as compelling. *State v. Goree*, 151 Or App 621, 636, 950 P2d 919 (1997). In those compelling situations, the right to remain silent is in such jeopardy that *Miranda* warnings are necessary to protect the right. But just as the right to counsel can be rendered meaningless by an individual's uncounseled actions before arrest, the right to remain silent can be rendered meaningless by an individual's statements prior to an interrogation under compelling circumstances.

██ However, the right to remain silent in a noncompelling interrogation is narrow. Police officers can engage in "mere conversations" with people, even if the officer makes "inquiries a private citizen would not." *State v. Holmes*, 311 Or 400, 410, 813 P2d 28 (1991). But a mere conversation can turn into a stop if officers persist in questioning a person who asserts the right to remain silent. *See State v. Shaw*, 230 Or App 257, 263, 215 P3d 105, *rev den*, 347 Or 365 (2009) (noting that a stop occurs when an officer indicates to a person that the person has no choice but to talk to the officer). When a person, not in a compelling setting, unequivocally invokes the right to remain silent as to an ongoing investigation conducted by a police officer, the police officer must respect that assertion of the right to remain silent if the police officer is personally aware of that invocation. *But see State v. Simonsen*, 319 Or 510, 516-17, 878 P2d 409 (1994) (holding that, during a *custodial interrogation*, "a lawyer's request to a responsible officer of a police organization that any questioning of the lawyer's client cease must be honored promptly by that organization, whether or not one or more members of the organization individually are ignorant of the fact or nature of the request").

█ Here, defendant's attorney unequivocally invoked defendant's right to remain silent by sending the detective a letter. The invocation was specific to the detective's investigation into allegations that defendant had sexually abused his stepdaughter. By the letter that defendant's attorney mailed, the detective personally knew that defendant invoked his right to remain silent. The letter, by itself, did nothing to prevent or stop the detective from lawfully conducting the investigation. In fact, the detective lawfully continued the investigation for eight months after receiving the letter. However, once the detective decided to contact defendant, the letter served to limit the means by which the detective could make contact. The detective could contact defendant through his counsel. Instead, the detective obtained computer software to communicate with defendant and recruited the stepdaughter to make the "pretext communications" with defendant. The stepdaughter agreed and acted as the detective's agent. *See State v. Smith*, 310 Or 1, 13, 791 P2d 836 (1990) ("[I]f the police were directly or indirectly

involved to a sufficient extent in initiating, planning, controlling or supporting [the informant's] activities, the exclusionary protection would apply."). Then, the detective communicated with defendant, through the stepdaughter, for the purpose of conducting the investigation. On those facts, the detective's actions violated defendant's constitutional right to remain silent under Article I, section 12.[4]

Accordingly, the trial court did not err in granting defendant's motion to suppress statements that the state obtained while subverting defendant's right to remain silent.[5]

Affirmed.

---

[4] Our resolution of this case does not hold or imply that defendant was entitled to *Miranda* warnings before the incriminating statements were elicited.

[5] Because we affirm the trial court's grant of defendant's motion to suppress, we also affirm the trial court's grant of defendant's motion to controvert the search warrant affidavit, which was based on illegally obtained statements.