DUNCAN, J., dissenting.
The proper result in this case flows directly from a defendant's constitutional right to counsel and this court's prior decisions concerning the scope of that right. Article I, section 11, guarantees a criminal defendant the right to counsel. Or. Const., Art. I, § 11 (providing that, in all criminal prosecutions, the accused shall have the right "to be heard by *** counsel"). That constitutional right includes the right to have counsel present *568 during certain pretrial encounters with the state. State v. Sparklin , 296 Or. 85, 93, 672 P.2d 1182 (1983). As this court ruled in Sparklin , once a person is charged with a crime, the person "is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant." Id . Those situations include police questioning about the charged crime. Id . They also include police questioning about other, uncharged crimes when "it is objectively reasonably foreseeable that the questioning will lead to incriminating evidence concerning the offense for which the defendant has obtained counsel." State v. Prieto-Rubio , 359 Or. 16, 18, 376 P.3d 255 (2016).
In this case, there is no dispute that, when defendant was represented by counsel on pending charges, a state agent questioned him without first notifying his counsel. There is also no dispute that it was reasonably foreseeable that the questioning would lead to incriminating evidence concerning the pending charges. Indeed, the state expressly concedes the questioning "violated the Prieto-Rubio rule, because it was reasonably foreseeable that questioning about defendant's new *** crimes would incriminate him for the originally charged crimes." Under this court's precedents, the questioning violated defendant's Article I, section 11, rights as to the pending charges. And, the state so concedes, stating that "the questioning risked circumventing defendant's right to counsel in his pending prosecution and thus violated his right to counsel for the original charges."
**822 Nevertheless, the majority holds otherwise. 364 Or. at 819-20, 441 P.3d 557. It holds that the questioning did not violate defendant's Article I, section 11, rights. In doing so, it departs from this court's prior cases and the constitutional principles that underlie them in order reach its preferred result given the particular facts of this case. It offers no principled reason for its result. Instead, as explained below, it attempts to distinguish this case from this court's precedents based on differences that are irrelevant to the legal issue, which is whether the questioning could implicate the defendant in the charged crimes. Therefore, I respectfully dissent.
As the majority recounts, defendant was initially charged with crimes relating to a shootout and a car chase, and counsel was appointed to represent defendant on those charges. While defendant was in jail, the police-acting through an informant-questioned him. The questioning concerned defendant's offer to pay the informant to assault the prosecutor and murder witnesses in defendant's pending case. 364 Or. at 804-05, 441 P.3d at ----. Thus, the questioning was relevant to whether defendant was attempting to obstruct the prosecution of the charged crimes. That, in turn, was relevant to whether defendant committed the charged crimes. See, e.g ., State v. Barone , 329 Or. 210, 238, 986 P.2d 5 (1999) (holding that a letter that could be construed as an attempt to tamper with a witness was relevant to the defendant's consciousness of guilt). The police knew that defendant's answers to the questions could incriminate him on the charged crimes. And, in fact, that is how the state used defendant's answers. After the police questioned defendant, the state obtained an amended indictment against defendant to include new charges relating to his efforts to interfere with the prosecution of the initial charges. All the charges were tried together, and the state used the evidence it obtained as a result of the questioning to prove both the initial charges and the subsequent charges.[1]
As the police and prosecutor recognized, the initially charged crimes and the subsequently charged crimes were related, because evidence that defendant was involved **823 in the latter would incriminate him on the former. Therefore, it is striking that the majority bases its result, in part, on the notion that the two sets of crimes are not sufficiently related. 364 Or. at 812-14, 441 P.3d at ----. That is not a view that anyone has, or reasonably could, take in this case. When a police officer questions a defendant about whether he has taken steps to conceal a *569 charged crime "it is objectively reasonably foreseeable that the questioning will lead to incriminating evidence" about the charged crime. Prieto-Rubio , 359 Or. at 18, 376 P.3d 255. Therefore, the defendant has an Article I, section 11, right to have counsel present. Id . Contrary to the majority's conclusion, the questioning in this case was related to the charged crimes, just as it was in Sparklin and Prieto-Rubio , because it was likely to incriminate defendant on the charged crimes for which he had counsel, and it concerned subjects relevant to counsel's representation of defendant on the charged crimes.
In Sparklin , the defendant was arrested for forgery in Eugene after using a credit card belonging to another person, Mansell. The defendant was arraigned and counsel was appointed to represent him on the forgery. Thereafter, two Portland detectives interrogated the defendant, without notifying his counsel. The detectives had information implicating the defendant in an incident in which Mansell had been assaulted and his automobile and credit cards stolen. They questioned the defendant about the assault of Mansell, as well as an unrelated robbery and murder of another man, Davidson. 296 Or. at 87, 672 P.2d 1182.
On review, this court concluded that the questioning about the Mansell assault violated the defendant's Article I, section 11, rights, reasoning that, even though the defendant had not been charged with the assault, the questioning was improper because the assault was related to the forgery. Id. at 98, 672 P.2d 1182. This court reached the opposite conclusion with regard to the questioning about the Davidson robbery and murder; it held that that questioning did not violate the defendant's Article I, section 11, rights because the robbery and murder were unrelated to the forgery. Id.
Thus, in Sparklin this court concluded that Article I, section 11, prohibits the state from questioning a represented **824 defendant about uncharged crimes if the uncharged crimes are related to the charged crimes on which the defendant is represented. Id . That prohibition is based on the principle that a defendant has the right to have counsel present during any pretrial adversarial contact "at which the state's case may be enhanced or the defense impaired due to the absence of counsel." Id . at 95, 672 P.2d 1182 (quoting State v. Newton , 291 Or. 788, 802-03, 636 P.2d 393 (1981) ). The prohibition is of the questioning itself. Sparklin , 296 Or. at 93, 672 P.2d 1182 (stating that "there can be no interrogation" related to the charged crime without first notifying counsel and affording counsel a reasonable opportunity to be present); id . at 98, 672 P.2d 1182 (concluding that "interrogation on this subject [the Mansell crimes] was improper"). Thus, the violation of the defendant's rights occurs at the time of questioning and does not depend on whether or how the state later uses any evidence resulting from that violation.
Importantly, the prohibition on questioning is intended to protect the attorney-client relationship. As this court explained in Sparklin , "To permit officers to question a represented suspect in the absence of counsel encourages them to undermine the suspect's decision to rely upon counsel. Such interrogation subverts the attorney-client relationship ." Id . at 93, 672 P.2d 1182 (emphasis added; internal quotation marks omitted). Noting that, "[i]n the smallest civil matter an attorney and his or her investigator are restricted in their contact with a represented party," this court concluded that "[w]e can certainly require no less of prosecutors or police in criminal matters." Id .
In Prieto-Rubio , this court addressed the scope of the Article I, section 11, prohibition on questioning a represented defendant. The defendant was charged with sexual abuse of a girl, A, who was a member of his extended family. After counsel was appointed to represent the defendant on the charges involving A, a detective questioned the defendant about whether he had sexually abused two other girls, K and L, who were also members of his extended family. The detective knew that the defendant was represented on the charges involving A, but did not notify the defendant's counsel before questioning the defendant because he intended to ask only about K and L. 359 Or. at 19, 376 P.3d 255. After the questioning, **825 the state charged the defendant with sexual abuse of K and L, based on incidents alleged to have occurred *570 at least eight months before the alleged abuse of A. The state filed a motion to consolidate the case involving A and the case involving K and L, and the trial court granted the motion. The defendant moved to suppress the evidence obtained as a result of the questioning, arguing that it violated his Article I, section 11, right to counsel. The trial court denied the motion on the ground that the charges involving A were different than those involving K and L, noting that they involved "different times and different victims." Id. at 21, 376 P.3d 255.
On review, this court reversed. It set forth what it identified as "the correct rule" for determining whether police questioning about uncharged crimes violates a defendant's Article I, section 11, rights. Id . at 33, 376 P.3d 255. Focusing on "the concerns that underlie the state constitutional guarantee of the right to counsel," it ruled that, "to the extent that questioning about uncharged offenses may foreseeably lead to *** incriminating information about the charged offense, it is foreclosed by the state constitutional right to counsel." Id . at 35-36, 376 P.3d 255. "Otherwise," that right "would be circumvented." Id . Thus, under Prieto-Rubio , the test for whether questioning violates a defendant's Article I, section 11, right to counsel is "whether *** it is reasonably foreseeable to a person in the position of the questioner that questioning will elicit incriminating information involving the charged offense for which the defendant has obtained counsel." Id . at 37, 376 P.3d 255. "That is an objective test that does not turn on the subjective impression of the questioner." Id .
Applying that test, this court held that the challenged questioning violated the defendant's Article I, section 11, rights because "it was reasonably foreseeable to a person in [the detective's] position, that questioning about K and L would elicit incriminating information about the charged abuse of A." Id . This court observed that there were similarities and differences between the alleged crimes against A and those against K and L. Id. at 37-38, 376 P.3d 255. On the one hand, all the crimes were alleged to have been committed at the defendant's house and to have involved similar physical conduct against similar victims. On the other hand, they occurred at substantially different times. But, in the end, **826 what mattered was that it was reasonably foreseeable that the questioning would elicit incriminating information about the charges for which the defendant had counsel. Id . at 38, 376 P.3d 255.
The majority attempts to distinguish this case from Prieto-Rubio based on what it describes as "important factual distinctions" between the uncharged conduct in this case and the uncharged conduct in Prieto-Rubio . 364 Or. at 812, 441 P.3d at 563. The majority seems to posit that, because the uncharged crimes in Prieto-Rubio were factually similar to the charged crimes, questions about the uncharged crimes violated the defendant's rights, but because the uncharged crimes in this case were not factually similar to the charged crimes, questions about the uncharged crimes did not violate defendant's rights. The majority states:
"The facts and circumstances of the charged crime in Prieto-Rubio duplicated to a significant extent the earlier, uncharged crimes because, as this court emphasized, all the crimes were committed in the defendant's home, all involved similar types of physical conduct, and all involved child-victims who were members of the defendant's family.
"Here, by contrast, any duplication between the facts and circumstances of defendant's new criminal activity and the facts of his charged crimes is minimal: the new criminal activity occurred in a different setting, involved different conduct, and involved victims who were targeted for a very different reason."
Id . at 813, --- P.3d at ----. But those factual differences are irrelevant to whether the defendant has an interest in having counsel present. A defendant has an interest-which is protected by Article I, section 11-in having counsel present for questioning on subjects relevant to counsel's representation on charged crimes, including questioning about uncharged crimes that could incriminate the defendant on the charged crimes. It does not matter whether the uncharged crimes are similar to the charged crimes or not. See Sparklin , 296 Or. at 98, 672 P.2d 1182 (concluding that uncharged *571 assault was related to charged forgery, even though the crimes occurred in different locations, at different times, and involved different types of conduct). The issue is whether the defendant's answers regarding the uncharged crimes could incriminate him on the **827 charged crime, not how they could incriminate him. It does not matter whether the evidence of the uncharged crime is, for example, evidence of a defendant's modus operandi or evidence of the defendant's consciousness of guilt.
And, contrary to the majority's other factual distinction, it does not matter whether the uncharged crimes are new. Prieto-Rubio would not have come out differently if the crimes against K and L had occurred after the crimes against A or even after the defendant had been charged with the crimes against A, because what mattered was whether the questioning about the crimes against K and L was reasonably likely to elicit information that would incriminate the defendant on the charged offense, which did not depend on the relative timing of the crimes.[2] Prieto-Rubio , 359 Or. at 37, 376 P.3d 255.
The questioning in this case was impermissible under Sparklin and Prieto-Rubio . It violated defendant's Article I, section 11, rights because it was reasonably foreseeable that it would elicit incriminating evidence-specifically, evidence of consciousness of guilt-about the charged offense. Because the state violated defendant's Article I, section 11, rights, it cannot use the evidence it obtained as a result of that violation. Prieto-Rubio , 359 Or. at 38, 376 P.3d 255 (citing State v. Dinsmore , 342 Or. 1, 10, 147 P.3d 1146 (2006) ). The state cannot profit from the violation of a person's rights. State v. Davis , 295 Or. 227, 234, 666 P.2d 802 (1983) (requiring exclusion of evidence obtained in violation of a defendant's rights under the Oregon Constitution in order to preserve a person's "rights to the same extent as if the government's officers had stayed within the law"). That constitutional principle is foundational; it is not to be ignored.
**828 Despite Sparklin and Prieto-Rubio , the majority holds that the questioning in this case did not violate defendant's Article I, section 11, rights. 364 Or. at 819-20, 441 P.3d at ----. The majority bases its holding, in part, on the premise that the right to counsel under Article I, section 11, is a trial right. 364 Or. at 809, 441 P.3d at ----. It is true that Article I, section 11, guarantees an individual the right to counsel at trial. But that is not all that it does. The Article I, section 11, right to counsel is not a hollow right; it does more than merely guarantee a defendant that a lawyer will be present in court when a case is called for trial. As discussed above, it includes the right to have counsel present during adversarial investigative proceedings that are reasonably likely to elicit evidence that the state could use against the defendant in the prosecution of the charged crimes. See Sparklin , 296 Or. at 92 n. 9, 672 P.2d 1182 ("There can be no question that the right to an attorney during the investigative stage is at least as important as the right to counsel during the trial itself.").
The majority carves out an exception to that right, based on factual differences that, as explained above, are irrelevant. The majority does so simply because it does not like the effect of the right to counsel in this particular case. It states that defendant's right to counsel "should not be understood to erect barriers to the police inquiry into defendant's new criminal activity." 364 Or. at 816, 441 P.3d at 565.
The majority's concern with the state's ability to investigate and prosecute crimes is understandable; the investigation and prosecution *572 of crimes are essential government functions. But there are limits-constitutional limits-on how the state can perform those functions. Violations of the right to be free from unreasonable searches and seizures, the right to remain silent, the right to counsel, and the right to a jury might be effective investigative and prosecutorial tools, but they are not permissible ones. The constitution guarantees individuals rights and those rights can-and were intended to-restrict the scope of government actions, including actions taken to investigate and prosecute crimes.
Of course, that is not to say that the state cannot investigate and prosecute defendant in this case or a **829 defendant in any other case. The restriction Article I, section 11, imposes is limited. It does not prohibit the police from questioning a defendant. It requires only that, if it is reasonably foreseeable that the questioning will incriminate the defendant on a charge for which the defendant has counsel, that the police notify the defendant's counsel and afford counsel a reasonable opportunity to be present for the questioning. If it is not reasonably foreseeable that the questioning will incriminate the defendant on a charge for which the defendant has counsel, then the questioning can occur without such notice and opportunity to be present.
The majority mentions the harm of a blanket prohibition of all questioning of a defendant who has counsel on pending charges. 364 Or. at 817-18, 441 P.3d at ----. But no one is advocating for a blanket prohibition in this case. This court rejected such a prohibition in Sparklin , the defendant did not argue for one in Prieto-Rubio , and defendant is not arguing for one here. Instead, he is arguing for application of the Prieto-Rubio rule.
That rule creates an objective test for determining whether questioning violates a defendant's Article I, section 11, right to counsel, which includes the right not to be questioned without counsel on subjects relevant to counsel's representation on charged crimes. Defense counsel's role is to protect the defendant's rights, which themselves are intended to ensure the fairness and integrity of criminal proceedings. Contrary to the suggestion in the majority opinion, defense counsel's role is not to assist a defendant in the commission of crimes. 364 Or. at 819, 441 P.3d at ----.
The Article I, section 11, prohibition on questioning without counsel does not depend on an officer's motivation for asking the question. Nevertheless, the majority appears to hold that whether questioning violates a defendant's Article I, section 11, rights depends on the subjective intent of the officer. It reasons that the questioning in this case did not violate defendant's Article I, section 11, rights on the charged crimes because the state was seeking information from defendant to disrupt or prosecute his new criminal activity. 364 Or. at 814, 441 P.3d at ----. Thus, the majority appears to hold that whether a question violates a defendant's **830 Article I, section 11, rights depends on the purpose of the questioning. That approach is inconsistent with this court's precedent, which is concerned with the content, not the purpose of questioning. Prieto-Rubio , 359 Or. at 37, 376 P.3d 255 (stating that the test for whether questioning violates Article I, section 11, is an objective test). In addition, that approach is subject to strategic manipulation. As such, it suffers the same flaw as other tests that this court has rejected for determining whether questioning violates a defendant's right to counsel. Prieto-Rubio , 359 Or. at 35, 376 P.3d 255 (rejecting offense-specific test, under which the defendant's right to counsel applies only to charged crimes and their lesser-included crimes because it creates a risk of strategic charging behavior); id . at 32, 376 P.3d 255 (quoting Texas v. Cobb , 532 U.S. 162, 182-83, 121 S. Ct. 1335, 149 L.Ed.2d 321 (2001) (Breyer, J., dissenting) (observing that the offense-specific test "permits law enforcement officials to question those charged with a crime without first approaching counsel, through the simple device of asking questions about any other related crime not actually charged in the indictment")). As I understand it, the majority suggests that, if an officer asks a defendant questions relevant to whether the defendant has attempted to obstruct the prosecution on a charged crime for which the defendant has counsel, whether the questions violate the *573 defendant's Article I, section 11, rights will depend on whether the officer's motivation is to investigate the charged crime or the possible obstruction (or possibly both). Such a test, which permits the state to question a defendant without counsel about subjects that could incriminate him on charged crimes, is antithetical to a defendant's constitutional right to counsel. And, permitting such questioning encourages officers "to undermine the suspect's decision to rely upon counsel," which not only leaves a defendant's rights unprotected, it "subverts the attorney-client relationship." Sparklin , 296 Or. at 93, 672 P.2d 1182.
Therefore, I respectfully dissent.

The state concedes that it should not have joined the initial charges and the subsequent charges in this case and should not do so in future similar cases.

To be clear, the fact that a charged crime is similar to an uncharged crime is relevant to whether questioning about the latter is likely to incriminate a defendant on the former, as in Prieto-Rubio . But similarity between two crimes is not required for questioning about one to be incriminating about the other. As this court stated in Prieto-Rubio , there are a number of factors which are relevant to whether it is reasonably foreseeable that questioning about uncharged crimes will elicit incriminating information involving a charged crime, including "temporal proximity, location, nature of defendant's conduct, and the nature of the investigation process itself and whether it involves the same or separate personnel." 359 Or. at 36-37, 376 P.3d 255. Here, not only were the initially charged crimes and subsequently charged crimes related, the same detectives were investigating them.