No. 18     May 1, 2025     557

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Appellant,*

*v.*

RANDALL RICHARD KILBY,
*Respondent.*

(CC 21CR13733) (SC S070698)

En Banc

On appeal from an order of the Deschutes County Circuit Court under ORS 138.045(2) and ORAP 12.07.*

Argued and submitted June 20, 2024.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the briefs for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Joshua B. Crowther, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the brief for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

FLYNN, C.J.

The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

James, J., concurred and filed an opinion.

_____
   * Annette C. Hillman, Judge.

**FLYNN, C.J.**

Defendant is being prosecuted for the murder of DB. In this pretrial appeal, the state challenges a trial court order suppressing statements that defendant made about DB while he was in custody as a suspect in another, unrelated crime. At the time of his arrest on the unrelated crime, defendant was already a suspect in the death of DB, and—although he had not been charged with either crime—he was represented by counsel in connection with the DB investigation, and that counsel had instructed officers to contact her before questioning defendant about DB. When officers later arrested defendant on the unrelated crime, however, they advised him that he had the right to remain silent and to speak with an attorney, but they did not notify his attorney, before conducting an interrogation that eventually turned to questions about the crime involving DB. Those questions prompted defendant to make the incriminating statements about DB that the trial court suppressed.

At issue is whether officers violated defendant's right to counsel under Article I, section 11, of the Oregon Constitution by conducting the precharging custodial interrogation without notifying defendant's counsel. The trial court granted defendant's pretrial motion to suppress the statements on that basis, and the state pursued an immediate and direct appeal to this court, as authorized by ORS 138.045(1)(d), (2). In response to the state's appeal, defendant continues to argue that the officers violated his right to counsel under Article I, section 11, and he also proposes a new, alternative basis for affirmance: that the state failed to prove that he had made a knowing, intelligent, and voluntary waiver of his rights under a different provision of the Oregon Constitution—Article I, section 12.

We conclude that the right to counsel that Article I, section 11, guarantees to all "accused" in a "criminal prosecution" was not triggered by defendant's arrest and custodial interrogation regarding crimes with which he had not been charged. We have repeatedly explained that protections under that section ordinarily do not arise until a person has been charged with a crime. The exception has been our holding that, when a suspect is arrested for driving

under the influence of intoxicants (DUII) and is asked to submit to a chemical determination of their blood alcohol concentration, Article I, section 11, affords a limited right to consult with counsel before making that decision. But the circumstances confronting a suspect who must decide whether to take a DUII-related breath test differ significantly from the circumstances confronting a suspect who must decide whether to answer questions during a custodial interrogation. Defendant was not arrested for DUII, and he was not asked to submit to a breath test; rather, he was asked to discuss DB after being advised that he had both the right to remain silent and the right to consult with counsel. As a result, we conclude that officers did not violate defendant's right to counsel under Article I, section 11, when they asked defendant about DB. We also decline to consider defendant's alternative argument on appeal that Article I, section 12, provides a basis for affirming the decision of the trial court. Accordingly, we reverse the order of the trial court and remand for further proceedings.

## I.   BACKGROUND

We state the facts based on the trial court record and the trial court's factual findings, which are not in dispute on appeal from the trial court's pretrial suppression order. *State v. Benton*, 371 Or 311, 313, 534 P3d 724 (2023). During a three-month period, defendant came under suspicion by the Bend Police Department for involvement in two different criminal incidents.

The first incident involved serious injuries that DB had sustained while at defendant's residence—injuries from which she later died. Police officers suspected that defendant had caused the injuries and arrested him. They released him from custody two days later, without charging him. But defendant remained a suspect, and police continued to investigate. Following his release, defendant contacted an attorney who spoke with one of the investigating officers. She told the officer that she "represented [defendant] in the [DB] investigation," that defendant "would no longer be making any statements to the police," and that, "if the police needed anything more from" defendant, they needed to contact her. Over the next couple of months, officers eventually

exhausted their investigative leads and suspended their investigation of DB's death, pending further evidence.

The second incident occurred three months after defendant had been arrested for DB's injuries and involved the deaths of JT and BT, who had been killed in the home of defendant's mother. Officers arrested defendant as a suspect in the deaths of JT and BT, and took him into custody. After advising defendant of his constitutional rights—that the person "has a right to remain silent and to consult with counsel and that any statements that the person makes may be used against the person in a criminal prosecution"— officers began questioning defendant about JT and BT. *State v. Vondehn*, 348 Or 462, 474, 236 P3d 691 (2010).[1] Defendant first confessed to killing JT and BT, and then expressed a desire to "take ownership" for other conduct. The officers then asked defendant about DB, even though at least one of the officers was aware that defendant's attorney had previously asserted that he would not make further statements about DB. In response to that questioning, defendant confessed to killing DB as well.

The state then charged defendant with one count of murder in the second degree, ORS 163.115, alleging that he intentionally had caused the death of DB. Prior to trial on the charges of murdering DB, defendant moved to suppress his confession that he made while in custody for the later deaths. Defendant contended that officers had violated his right to counsel under Article I, section 11, when they had asked him about DB without his attorney present. He relied on this court's decision in *State v. Craigen*, 370 Or 696, 524 P3d 85 (2023), which explains that "[t]he Article I, section 11, right to have counsel present at an interrogation applies regardless of whether the defendant asks for counsel to be present." *Id.* at 707. And, although *Craigen* involved interrogation about charged crimes, on which the defendant was

---

[1] This court has long referred to the advice of rights that is required to ensure the validity of a suspect's waiver of Article I, section 12, rights as "*Miranda* warnings," after the decision of the United States Supreme Court, which required the same warnings under the Fifth Amendment to the United States Constitution. *State v. Ward*, 367 Or 188, 191 n 9, 475 P3d 420 (2020). But this court has required those warnings "[o]n an independent state-law basis," to give effect to the right guaranteed under the Oregon Constitution. *Id.*

represented by counsel, *id*. at 710, defendant argued that the same right applied to custodial interrogations about uncharged crimes on which the suspect is represented by counsel. Defendant emphasized that he had previously been arrested on the DB matter and was again in custody at the time of the interrogation, and that, at the time of the interrogation, officers were aware that he was represented by counsel with regard to DB. Based on those facts, defendant argued, the state had violated his Article I, section 11, right to counsel when the interrogation turned to questions about DB.

The state did not dispute that the scope of the Article I, section 11, right to counsel—when it applies—includes the right to not be questioned without counsel present, even if the defendant has not affirmatively asked for counsel to be present. But it argued that the right to counsel under Article I, section 11, commences only once a person has been charged with a crime, with a single narrow exception for a person arrested for DUII and confronted with the choice to take or refuse a breath test. Because defendant had not been formally charged with any crime or arrested for a DUII at the time when officers questioned him about DB, the state insisted that officers had not violated defendant's right to counsel under Article I, section 11.

The trial court agreed with defendant that officers had violated Article I, section 11, by interrogating defendant, while he was in custody, about a crime for which he was represented by counsel. The trial court therefore granted defendant's motion and suppressed his confession to killing DB, and the state pursued this direct pretrial appeal. *See* ORS 138.045(1)(d), (2) (providing that state may choose to appeal directly from an order "made prior to trial suppressing evidence" and that the appeal is to the Supreme Court if the defendant is charged with murder or aggravated murder).

## II.  ANALYSIS

The right to counsel in criminal cases has two distinct sources of authority under the Oregon Constitution: one under Article I, section 11, and one under Article I, section 12.

Article I, section 11, expressly addresses the right to counsel, guaranteeing that, "[i]n all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" The right to counsel under Article I, section 11, ensures that, "when the state exercises its prosecutorial powers against a person, the person can call on counsel to assert and protect the person's rights," including "the constitutional rights to be free from unreasonable searches and seizures" and "the rights to be tried by an impartial jury, to meet witnesses face to face, and to have compulsory process for obtaining witnesses." *Craigen*, 370 Or at 705. Once the right to counsel under Article I, section 11, commences, it guarantees the same right in all interrogations regarding the criminal episode—the right to have counsel present, regardless of whether the defendant asks for counsel to be present. *Id.* at 707.

We have repeatedly held that the right to counsel under Article I, section 11, "commences upon the initiation of a 'criminal prosecution.'" *State v. Davis*, 350 Or 440, 478, 256 P3d 1075 (2011). Thus, if the state has not initiated a "criminal prosecution" against a defendant, then the Article I, section 11, right to counsel does not apply at all. *See id.* (rejecting the argument that the right to counsel "applies any time police contact an individual, even before a prosecution has been commenced"). In addition, because "[i]t is the fairness of the criminal prosecution which counsel's presence helps to ensure," the Article I, section 11, right to counsel is "specific to the criminal episode" for which the person is being prosecuted. *State v. Savinskiy*, 364 Or 802, 809-10, 441 P3d 557, *adh'd to as modified on recons*, 365 Or 463, 445 P3d 307 (2019) (internal quotation marks omitted).

This court has also identified an additional, more limited right to counsel as inherent in Article I, section 12, which protects a suspect from the coercive nature of custodial interrogations and other compelling circumstances, regardless of whether the state has initiated a criminal prosecution.[2] *State v. Ward*, 367 Or 188, 191, 475 P3d 420 (2020). That constitutional provision "guarantees a right to

---

[2] Article I, section 12, provides, "No person shall be *** compelled in any criminal prosecution to testify against himself."

remain silent and a derivative or adjunct right to have the advice of counsel in responding to police questioning." *Id.* at 190-91 (internal quotation marks omitted). "To protect that derivative right to counsel, when a suspect in police custody or compelling circumstances asks to speak to a lawyer or have a lawyer's assistance, all police questioning must cease." *State v. Turnidge (S059155)*, 359 Or 364, 400, 374 P3d 853 (2016). Moreover, if the person's statements are "'equivocal'—that is, when it is unclear or ambiguous if the suspect is unwilling to answer any questions without counsel present—police are limited to asking follow-up questions to clarify whether the suspect meant to invoke his or her right to counsel." *Id.*

As described above, the trial court ruled that officers violated defendant's right under Article I, section 11, to have counsel present during the interrogation. In briefing to this court, the state reiterates its argument from the trial court that the protections of Article I, section 11, do not apply at all under the circumstances presented in this case—during the precharging interrogation of a suspect, even if the suspect has been arrested and is in custody. Defendant responds that the trial court correctly rejected the state's position. But he also proposes two other paths to affirming the trial court, the second of which he raises for the first time in this court.

Defendant first argues that, even if the full protections of the Article I, section 11, right to counsel commence only upon formal charges, this court should hold that at least a limited form of the Article I, section 11, right to counsel applies to individuals who are in custody following arrest for a crime that has not yet been charged, if they are represented by an attorney. He relies on this court's decision in *State v. Spencer*, 305 Or 59, 750 P2d 147 (1988). In *Spencer*, we held that Article I, section 11, guarantees that "an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *Id.* at 74-75. Defendant argues that the analogous right in the context of this case would be the right of an arrested individual, upon request, to a reasonable opportunity to obtain legal advice before

deciding whether to submit to interrogation. And he argues that, in this case, the officers were required to give him the opportunity to consult with his attorney before questioning him about DB because he was in custody and because his attorney had made a request on defendant's behalf that he have the opportunity to consult with the attorney prior to any questioning about DB.

As his new, alternative argument, defendant emphasizes that Article I, section 12, guarantees a similar "limited" right to counsel: "[I]f a person in custody or other similarly compelling circumstances unequivocally invokes" the right to consult with counsel, "then police must honor that request and stop questioning." *Ward*, 367 Or at 191 (internal quotation marks omitted). According to defendant, his statements about DB were not the product of a knowing, voluntary, and intelligent waiver of his Article I, section 12, rights, because officers did not tell him that "he had counsel ready to represent him" or that his "counsel had advised that he not speak about the [DB] matter without counsel present." Thus, he contends, Article I, section 12, supplies an alternative ground on which to affirm the trial court suppression of his confession. *See Outdoor Media Dimensions, Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (describing standards for affirming as right for the wrong reason).

As explained below, we agree with the state that, although the Article I, section 11, right to counsel—once triggered—guarantees a right to have counsel present during any interrogation regarding a charged offense, the "prosecution" to which that right applies is not triggered by the arrest and interrogation of a person who has not been charged with a crime. We also are not persuaded that *Spencer*'s "reasonable opportunity to obtain legal advice" prior to choosing whether to submit to a DUII breath test should be expanded to the context of precharging custodial interrogations. Finally, we are not persuaded that the factual record is materially the same record that the state would have developed had defendant raised his Article I, section 12, waiver argument in the initial motion to suppress. Accordingly, we leave for future proceedings any argument

that defendant's confession must be suppressed as obtained in violation of his rights under Article I, section 12.

A.	*Defendant's Article I, Section 11, Argument*

We have previously emphasized that the right to counsel guaranteed under Article I, section 11, is dependent on two separate components: "when the right to counsel commences, or 'attaches,' and the scope of that right after attachment has occurred." *Davis*, 350 Or at 476. As the term "commence" suggests, the question whether the right applies at all has a significant temporal component; the fundamental requirement is that the right to counsel under Article I, section 11, "commences upon the initiation of a 'criminal prosecution.'" *Id*. at 478. The other component is the scope of the right to counsel when it *does* apply under Article I, section 11. *See id*. (emphasizing that, "[a]*fter the right attaches*, the court may evaluate the particular circumstances, the nature of the evidence, and the like to determine the scope of the right to counsel" (emphasis in original)).

In this case, there is no dispute about the scope of the right. Our cases make clear that, once the protection of Article I, section 11, has commenced, "the defendant has a right to have counsel present" at certain pretrial events, including any questioning about matters related to the criminal episode. *Craigen*, 370 Or at 706. That "Article I, section 11, right to have counsel present at an interrogation applies regardless of whether the defendant asks for counsel to be present." *Id*. at 707. And the right is absolute: "[O]nce a defendant has counsel, the defendant cannot waive his Article I, section 11, right to counsel without first having an opportunity to consult with counsel." *Id*. That scope is required because, "once a person is charged with a crime, the person is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant."[3] *Id*. (internal quotation marks omitted).

---

[3] The pretrial situations in which we have held that a person who has been charged with a crime is entitled to "the benefit of an attorney's presence" under Article I, section 11, include—in addition to interrogation about the charged crimes—"pretrial events like interrogations, line-ups, polygraph sessions, and psychiatric examinations," and, under limited circumstance, interrogation about

Instead, the dispute in this case focuses on whether the right to counsel that Article I, section 11, guarantees commences when a person is arrested and subjected to custodial interrogation regarding crimes for which the person has not been charged**.** That focus is significant, because we have repeatedly emphasized that the inquiry into whether the Article I, section 11, right applies is distinct from the inquiry into the scope of the right once it does apply—that is, that considerations regarding the scope of the right "do not define when the 'criminal prosecution' within the meaning of Article I, section 11, has been initiated." *Davis*, 350 Or at 478; *see also State v. Gray*, 370 Or 116, 129, 515 P3d 348 (2022) ("[T]he attachment of the right to counsel is separate from the scope of that right[.]").

As emphasized above, the right to counsel under Article I, section 11, "commences upon the initiation of a 'criminal prosecution.'" *Davis*, 350 at 478. In prior decisions, based on extensive consideration of "the historical circumstances surrounding the adoption of Article I, section 11, and the case law construing it," this court has explained that the right "was originally understood to apply only to the conduct of criminal trials," but that "changes in the nature of criminal prosecutions and recognition that a defendant's assistance of counsel would be less than meaningful if it were limited to the trial itself" eventually led this court to conclude that the right to counsel under Article I, section 11, commences when a person "is charged with a crime." *Savinskiy*, 364 Or at 808 (internal quotation marks omitted).

This court has never previously held that the Article I, section 11, right to counsel commences when a suspect is taken into custody and interrogated prior to being charged with a crime, and most of defendant's argument for now doing so depends on statements that this court has made in the course of explaining the *scope* of the Article I, section 11, right to counsel—once it has arisen. Defendant's reliance on those statements to support his argument that we should consider the prosecution to have commenced with his arrest and interrogation "reflects a fundamental

---

uncharged crimes that are related to the crime for which the person has been charged and is represented by counsel. *Craigen*, 370 Or at 706-08.

misapprehension of the distinction between when a right to counsel commences, or 'attaches,' and the scope of that right after it has attached." *Davis*, 350 Or at 478.

For example, defendant relies extensively on this court's decision in *State v. Sparklin*, 296 Or 85, 672 P2d 1182 (1983), in which we repeatedly highlighted the valuable protection that counsel can provide during a police interrogation, without holding that the prosecution commenced prior to charging. The defendant in *Sparklin* had been charged with, and was represented by counsel on, a crime of forgery. *Id*. at 87. Officers from a different city later arrested and interrogated the defendant as a suspect in two uncharged murders, without notice to the defendant's attorney and without providing the defendant an opportunity to consult with the attorney who represented him on the charged crime. *Id*. One of the uncharged murders about which officers interrogated defendant was factually unrelated to the forgery for which he had been charged. *Id*. He ultimately was charged for that unrelated murder and moved to suppress his statements on the theory that the interrogation had violated his right to counsel under Article I, section 11. *Id*.

Before ultimately concluding that "the [A]rticle I, section 11 right to an attorney is specific to the criminal episode in which the accused is charged" and that "[t]he prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes," this court first described "the purpose an attorney serves in defense of one accused of a crime." *Id*. at 94-95. For example, we emphasized that "[i]nterrogations, like line-ups, polygraph sessions and psychiatric examinations, are investigative tools by means of which the state builds its case against the accused," and that "[a]n attorney's presence" at interrogations and other investigative encounters "may serve to forestall the use of impermissibly derived evidence at trial." *Id*. at 94. We also quoted with approval an observation that "'[t]he constitutional right to counsel is meant to counteract the handicaps of a suspect enmeshed in the machinery of criminal process'" and that interrogating a represented defendant without notifying the attorney "'subverts the attorney-client

relationship.'" *Id.* at 93 (quoting Note, *Interrogation and the Sixth Amendment: The Case for Restriction of Capacity to Waive the Right to Counsel*, 53 Ind L J 313, 315 (1977-1978)).

Although defendant relies on that portion of *Sparklin* to argue that his Article I, section 11, rights were violated, the opinion in *Sparklin* prefaced those observations about the purpose of an attorney with statements that made clear that those considerations went to the *scope* of the Article I, section 11, right to counsel, *after* the state has initiated the prosecution. *See id.* ("[o]nce an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the *crime charged*" without involving the attorney (emphasis added)). And we explained that the protections of an attorney during police interrogations "were mandated by Oregon constitutional guarantees which provide that[,] once a person is charged with a crime[,] he or she is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant." *Id.*

And, despite highlighting the value of counsel during an interrogation, this court held in *Sparklin* that officers did not violate the defendant's Article I, section 11, right to counsel by questioning him about the crime that was factually unrelated to the crime for which he had been charged. *Id.* at 95. We explained that "the [A]rticle I, section 11[,] guarantee of an attorney, like the federal counterpart, remains focused on the trial; that is, it is the protection of rights to which a defendant is entitled in the trial itself which the guarantee is intended to preserve." *Id.* at 94. Thus, we rejected the defendant's argument that "representation by an attorney on one charge insulates [the] defendant from police questioning regarding any crime for which he may be a suspect, whether or not it stems from the incidents surrounding the crime charged." *Id.* at 94; *see id.* at 95 (rejecting argument).

It is important to acknowledge that the defendant in *Sparklin* had limited his arguments to the *scope* of the Article I, section 11, right to counsel if formal charges have been filed regarding *some* criminal episode. The court noted

that "[w]e are not presented in this case with the question whether the Article I, section 11[,] right to an attorney may attach at any time earlier than the federal right," which commences with formal charging. *Id.* at 92 n 9. And some aspects of that footnote may have been intended to invite such an argument in future cases. *See id.* ("There can be no question that the right to an attorney during the investigative stage is at least as important as the right to counsel during the trial itself." (Citing Note, *An Historical Argument for the Right to Counsel During Police Interrogation*, 73 Yale L J 1000, 1041 (1964).)).

Throughout the subsequent four decades, however, this court has undertaken the kind of rigorous scholarly analysis of Article I, section 11, that the *Sparklin* footnote may have been inviting, and that analysis dispels any suggestion that the "importance" of an attorney during an interrogation justifies advancing the commencement of the "prosecution" to the point of a precharging custodial interrogation. *See Davis*, 350 Or at 472 (noting based on examination of the text and historical context of Article I, section 11, "a complete absence of evidence that the framers would have contemplated a right to counsel that extended before a defendant had been formally accused"); *see also State v. Swan*, 363 Or 121, 123, 420 P3d 9 (2018) (reiterating that, "[o]rdinarily, the Article I, section 11, right to counsel does not attach until indictment").

Our decision in *Davis*, in particular, puts an end to *Sparklin*'s speculation that the "importance" of an attorney during an interrogation could justify advancing the commencement of the "prosecution" for purposes of Article I, section 11. In *Davis*, the defendant's stepdaughter alleged that the defendant had sexually abused her. While the state was still investigating that allegation, the defendant retained counsel, who advised the investigating officer that he represented the defendant, was invoking the defendant's right to remain silent, and was instructing the officer "not talk to [the defendant] except through me." 350 Or at 443. Months later, police surreptitiously contacted the defendant through the victim, who agreed to engage in monitored, pretextual conversations with the defendant, including saying certain

things that the officers had scripted with the purpose of eliciting potentially incriminating statements from the defendant. *Id*. The defendant in fact made incriminating statements during those conversations, and, when the state later charged him with numerous sexual offenses, the defendant moved to suppress his statements as obtained in violation of his right to counsel under Article I, section 11, among other violations. The trial court suppressed the statement, *id*., but this court reversed, *id*. at 479.

The defendant in *Davis* had relied on the statements from *Sparklin* about the critical value of counsel, including that court's suggestion in the footnote quoted above, that "the right to an attorney during the investigative stage is at least as important as the right to counsel during the trial itself." *Sparklin*, 296 Or at 92 n 9. But this court in *Davis* described the defendant's reliance on *Sparklin* "for the broad extension of the right to counsel under Article I, section 11, that he urges on us" as "untenable." *Davis*, 350 Or at 477. Although acknowledging that the court in *Sparklin* had suggested that the "'investigative stage can be as important as the trial itself,'" *id*. at 478 (quoting *Sparklin*, 296 Or at 92 n 9), the court in *Davis* emphasized that *Sparklin* was "refer[ing] to the investigative stage *of a criminal prosecution*," *id*. (emphasis in original; internal quotation marks omitted). *Davis* also emphasized that the "defendant's argument that we should recognize a right to counsel when invoked in response to any police inquiry because of its 'importance' reflects a fundamental misapprehension of the distinction between when a right to counsel commences, or 'attaches,' and the scope of that right after it has attached." *Id*.

Focusing on the pertinent question—whether the defendant in *Davis* had an Article I, section 11, right to counsel at the time when he made the incriminating statements—this court held that those protections had not yet been triggered. *Davis* reached that conclusion by applying the analytical framework that this court first articulated in *Priest v. Pearce*, 314 Or 411, 840 P2d 65 (1992), for construing a provision of the original Oregon Constitution, which includes Article I, section 11. *Davis*, 350 Or at 446 (citing *Priest*, 314

Or at 415-16). Under that framework, "[w]e examine the text in its context, the historical circumstances of the adoption of the provision, and the case law that has construed it." *Id*. at 446. Our goal in that analysis is to "ascertain the meaning most likely understood by those who adopted the provision" and, from that, "identify, in light of the meaning understood by the framers, relevant underlying principles that may inform our application of the constitutional text to modern circumstances." *Id*.

Applying that framework, the court in *Davis* began with the text of Article I, section 11, which provides a right to counsel to "the accused" "[i]n all criminal prosecutions." According to the court, "the bare wording suggests that the right may be exercised at trial or, at the earliest, after formal charges have been filed against a defendant." *Davis*, 350 Or at 464. The court explained that, textually, by using the phrase "criminal prosecutions," Article I, section 11, "appears to connote the idea that the right attaches only upon the initiation of some sort of formal proceeding by the state against an individual." *Id*. at 463. Further, that narrow definition of "criminal prosecution" "appears to be the sense in which the word would have been understood at the time of its adoption in the mid-nineteenth century, as well." *Id*. The court found similar support for that principle in the term "accused" in Article I, section 11, because "[o]rdinarily, a reference to an 'accused' connotes one who has been formally charged with having committed a criminal offense." *Id*.

The court in *Davis* reached the same conclusion when considering the historical context in which the framers adopted Article I, section 11. According to the court, that historical context "reveals that the framers most likely understood" that the Article I, section 11, right to the assistance of counsel is "limited to the conduct of the trial or, at the earliest, proceedings following formal charges against an accused." *Id*. at 464. The court explained that, although the right to counsel was originally understood to apply only during a trial, "[a]s the nature of law enforcement and public criminal prosecution changed in the late-nineteenth and early-twentieth centuries," courts expanded the meaning of

"criminal prosecution" to include certain pretrial events and to ensure the fairness of the subsequent trial. *Id.* at 469. But, after an extensive review of English common law, the federal constitution, and state constitutions, the court concluded that there was "a complete absence of evidence that the framers [of the Oregon Constitution] would have contemplated a right to counsel that extended before a defendant had been formally accused." *Id.* at 472. "To the contrary," the court emphasized, "even when state and federal courts began to extend the right to counsel to stages of a criminal prosecution before the trial itself—nearly a century after the adoption of the Oregon Constitution—they uniformly adhered to the conclusion that the text of the guarantee and its underlying purpose could not justify extending the right to encounters before the initiation of formal criminal proceedings." *Id.*; *see State v. Prieto-Rubio*, 359 Or 16, 24, 376 P3d 255 (2016) ("[A]s the nature of law enforcement and criminal prosecution changed, both state and federal courts expanded their views of the 'criminal prosecution' that triggered the right to counsel, so that the constitutional guarantee applied as early as the commencement of criminal proceedings *by indictment or other formal charge*." (Emphasis added.)). Moreover, the court emphasized, "Oregon case law following the adoption of Article I, section 11, was entirely consistent with" that understanding of when the right to counsel commences—with one exception that we discuss below. *Davis*, 350 Or at 472. Ultimately, the court concluded that "[i]n no sense can it reasonably be held that, at the time [when the defendant] made those incriminating statements, he was an 'accused' in a 'criminal prosecution.'" *Id.* at 479.

The sole exception that *Davis* identified to the long-standing "conclusion that the text of the guarantee and its underlying purpose could not justify extending the right to encounters before the initiation of formal criminal proceedings," *id.* at 472, is this court's decision in *Spencer. See id.* at 473-77 (discussing *Spencer*). *Spencer* addressed an issue that this court had wrestled with over a series of split decisions during the 1980s.

In the first such decision, a four-judge majority held as a matter of statutory construction that Oregon's "implied

consent" statutes—the statutes specifying when and how the state would impose consequences on a driver who refuses a request to submit to a breath test—required a "voluntary and informed choice" and that the results of the test must be suppressed if officers violated that Oregon law. *State v. Scharf*, 288 Or 451, 458, 460, 605 P2d 690 (1980). Less than two years later, however, a different four-judge majority overruled the conclusion that the results of a breath test must be suppressed when officers fail to allow the person to consult with counsel, and a plurality concluded that the failure did not violate the defendant's Article I, section 11, right to counsel because the defendant had not yet been charged with a crime. *State v. Newton*, 291 Or 788, 794, 804-05, 636 P2d 393 (1981). Finally in *Spencer*, another four-judge majority reversed *Newton* and held that an arrested driver has a right under Article I, section 11, "upon request[,] to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." 305 Or at 74. We turn to consideration of that case and defendant's reliance upon it here.

In *Spencer*, the defendant was arrested for DUII and taken to jail, where an officer asked him to take a breath test before any charges were filed. *Id.* at 61. The officer explained to the defendant that the choice whether to take a breath test carried substantial consequences. *Id.* At the time, those consequences included that the person would be subject to criminal penalties if the test showed that the person was under the influence of intoxicants, but that, if the person refused the test, evidence of the refusal could be offered against the person. *Id.* at 62 n 1 (quoting ORS 813.130 (1985)). Moreover, if the person refused the test, their Oregon driver license or permit "'will be taken immediately,'" their "'driving privileges will be suspended,'" and "'[t]he suspension will be substantially longer if the person refuses the test.'" *Id.* (quoting ORS 813.130 (2)(c), (d) (1985)).

The defendant in *Spencer* had asked for the opportunity to call his attorney before deciding whether to take the breath test, but the officer refused. As our decision explains, the defendant testified at the hearing on his motion to suppress "that he had the name of an attorney and knew how

to contact that attorney, had he been permitted to do so." *Id*. at 61. Without the advice of counsel, the defendant chose to take the test, and he later moved to suppress the results. The trial court denied the motion, and the defendant was convicted.

This court reversed, holding that, "under the right to counsel clause in Article I, section 11, an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *Id*. at 74-75. The court reasoned that a person in that situation had been "confronted with the full legal power of the state, regardless of whether a formal charge has been filed," *id*. at 74, and the court repeatedly referred to a driver arrested for DUII as an "accused," *id*. at 64. Thus, the court held, "[w]here such custody is complete, neither the lack of a selected charge nor the possibility that the police will think better of the entire matter changes the fact that the arrested person is, at that moment, ensnared in a 'criminal prosecution.'" *Id*.

This court has not, however, applied *Spencer* beyond the DUII-arrest context. *See Swan*, 363 Or at 123 (explaining that "this court has held that an Article I, section 11, right to counsel can attach before indictment when a driver is arrested for DUII"); *State v. Dinsmore*, 342 Or 1, 10, 147 P3d 1146 (2006) (applying *Spencer* to the context of a DUII arrest even though the subsequent prosecution was for criminally negligent homicide).[4] And we decline the invitation to do so here.

As should be clear from our discussion up to this point, the scope of the right to counsel recognized in *Spencer*

---

[4] In *Dinsmore*, we noted that "none of the observations that this court made in [*Spencer*] suggest that the principles announced there apply to only DUII prosecutions; indeed, the opposite is true." 342 Or at 10. But *Dinsmore* cannot be understood as suggesting that the Article I, section 11, right to counsel is triggered by a precharging arrest outside of the DUII context. Rather, the key aspect of the statement quoted above is "DUII *prosecutions*"—although the defendant in *Dinsmore* had been arrested for crimes including DUII and had been forced to decide whether to submit to a breath test without the opportunity to consult privately with counsel, the state had argued that *Spencer* did not require exclusion of that evidence in the prosecution for criminally negligent homicide. *Id*. at 5. *Dinsmore* rejected that argument, but did not extend *Spencer* beyond the context of a suspect who was under arrest for DUII and was asked to submit to a breath test. *Id*. at 10.

is far more limited than the scope of that right during any interrogation after a formal charge has been filed. The court in *Spencer* observed that it was drawing "no absolute line," but that "a period of 15 minutes after the request to take the test has been made will doubtless suffice in most cases" for the "reasonable opportunity to obtain legal advice." 305 Or at 75 n 5, 74. Once the state initiates a prosecution by charging the defendant, however, and throughout the subsequent course of the prosecution, the Article I, section 11, right to counsel is a right to "have counsel *present* at an interrogation[,] *** regardless of whether the defendant asks for counsel to be present," and the defendant cannot waive that right "without first having an opportunity to consult with counsel." *Craigen*, 370 Or at 707 (emphasis added); *see also Swan*, 363 Or at 124 (describing the right to counsel identified in *Spencer* as "not as broad" as the general Article I, section 11, right to counsel (internal quotation marks omitted)). We, nevertheless, observed in *Davis* that *Spencer*'s recognition of even a limited Article I, section 11, right to counsel prior to charging is in tension with the text and historical context for the adoption of Article I, section 11. *See* 350 Or at 477 (observing that "[i]t could be argued" that *Spencer* "is difficult to reconcile" with the text and historical context of Article I, section 11).

*Davis* stopped short of resolving "any such tensions" between *Spencer* and the court's seeming conclusion that the Article I, section 11, right to counsel is triggered no earlier than formal charging, because it was unnecessary to do so to resolve the case before it. *See id.* at 477 (explaining that, even under *Spencer*, the Article I, section 11, right to counsel arose "at the earliest" at the time of formal custody, and the defendant in *Davis* had not been taken into custody). But the constitutional analysis in *Davis* answers that question, as we next explain.

We first emphasize that, to the extent that the court's reference in *Davis* to the right arising "at the earliest" at the time of formal custody has been understood as deciding that the Article I, section 11, right to counsel *does arise* with precharging interrogation under formal custody, that understanding is inconsistent with the court's ultimate

conclusion that the text, historical context, and relevant case law reveal that those who adopted Article I, section 11, most likely understood it "to apply, at the earliest, upon formal charging." *Id*. The statement in *Davis* was *dicta*—merely the court's way of explaining why it did not need to resolve the fate of *Spencer*. And in the nearly 30 years since *Spencer* was decided, we have never applied *Spencer*'s constitutional analysis outside the context of suspect arrested for a DUII who has been asked to submit to a blood-alcohol examination.[5]

To be sure, *Davis* emphasized that the purpose of "ascertain[ing] the meaning most likely understood by those who adopted [Article I, section 11,] is not to freeze the meaning of the state constitution in the mid-nineteenth century," but, rather, "to identify relevant underlying principles that may inform our application of the constitutional text to modern circumstances." 350 Or at 446. Highlighting that ultimate inquiry, defendant contends that modern circumstances make custodial interrogations pivotal to the investigation and prosecution of crime, placing a suspect at legal risk in circumstances that we have otherwise identified as compelling and potentially coercive. *See Vondehn*, 348 Or at 474 (describing custodial interrogations as inherently compelling circumstances). According to defendant, those circumstances mean that we should understand the "criminal prosecution" that triggers the Article I, section 11, right to counsel as commencing when a suspect is arrested and interrogated. He urges this court to hold at least that the same limited right to counsel that this court recognized in *Spencer* applies to suspects who are in custody and forced to decide whether to submit to police questioning.

---

[5]  The Court of Appeals has only one decision applying *Spencer*'s precharging right to counsel outside the DUII context—its own decision in *State v. Davis*, 234 Or App 106, 227 P3d 204 (2010). There, the Court of Appeals read *Sparklin* and *Spencer* to mean that the Article I, section 11, right to counsel applies "any time that an individual's uncounseled actions would undermine the right to assistance of counsel at trial," even if those actions occurred before the state commenced a "criminal prosecution." *Id.* at 111-12. The Court of Appeals acknowledged that "the text of the constitutional right to counsel [under Article I, section 11,] is limited to 'all criminal prosecutions,'" but held that "the right to counsel can be invoked prior to the criminal prosecution." *Id.* at 112. This court expressly rejected that reading of our case law when it reversed the Court of Appeals decision. *Davis*, 350 Or at 478.

We decline to do so. As we have emphasized, considerations surrounding the value of the opportunity to consult with counsel are considerations that may inform the scope of the Article I, section 11, right, but those considerations "do not define when the 'criminal prosecution' within the meaning of Article I, section 11, has been initiated." *Davis*, 350 Or at 478. Defendant highlights statements that this court made in *Sparklin* and *Spencer* about the value of counsel to a suspect who is in custody and has been asked to answer police questions to argue that those circumstances should define when the "prosecution" commences for purposes of the Article I, section 11, right to counsel. As we emphasized in *Davis*, however, that approach "reflects a fundamental misapprehension of the distinction between when a right to counsel commences, or 'attaches,' and the scope of that right after it has attached." 350 Or at 478. For the reasons that we articulated in *Davis*, we conclude that arrest and interrogation are not an exception to the rule that the protections of Article, I, section 11, ordinarily do not arise until a person has been charged with a crime.

We, nevertheless, reaffirm the holding of *Spencer*, because, when a person has been arrested for DUII and is confronted with the choice to submit to or refuse a test that will measure their blood alcohol level, "the full legal power of the state" has been set in motion to an extent that is remarkably similar to the "prosecution" of an "accused" that is triggered by formal charging. *Id.*, 305 Or at 74. Unlike another suspect's decision to answer police questions during a custodial interrogation, a driver arrested for DUII is confronted—by the legal power of the state—with a Hobson's choice: submitting to the test may result in the discovery of evidence that is sufficient to establish that they are guilty of the offense, while refusing to submit can be used as evidence against them in a future trial, results in the driver's Oregon license or permit being immediately taken, and exposes the person to suspension of their driving privileges. All those consequences existed at the time of *Spencer* and remain true today. *Id.* at 62 n 1 (reciting provisions of ORS 813.130 (1985)); ORS 813.130(3). Indeed, the current statutory scheme imposes even greater consequences, because refusing to submit to a breath test is, itself, an offense for a

driver arrested for DUII and in addition subjects the driver to a fine of at least $500. ORS 813.095; ORS 813.130(3)(e).

But we reject defendant's request that we extend *Spencer*'s concept of an Article I, section 11, "reasonable opportunity to consult with counsel" to a person who is arrested and interrogated for crimes for which the person has not been charged. Unlike a driver arrested for DUII and forced by the "legal power of the state," to choose between submitting to a breath test or confronting the serious consequences of refusal, a suspect who is arrested and forced to decide whether to answer police questions has a constitutionally protected right to refuse without consequence. As a threshold protection, before any questioning of a person in custody, officers must explicitly warn "that the person has a right to remain silent and to consult with counsel." *Vondehn*, 348 Or at 474. And those rights, which are guaranteed by Article I, section 12, are absolute: If the person asks to speak to a lawyer or invokes the right against self-incrimination, the questioning "must cease." *Turnidge (S059155)*, 359 Or at 400 (addressing right to counsel); *see State v. Avila-Nava*, 356 Or 600, 609, 341 P3d 714 (2014) (addressing invocation of right against self-incrimination). Because officers must honor an invocation of those rights, "the coercive atmosphere of police interrogation is to some degree dispelled" at that point. *Avila-Nava*, 356 Or at 609 (internal quotation marks omitted). Moreover, a person's assertion of those rights has no negative consequences. The law imposes no penalty on a person who decides to assert their constitutional right to remain silent or the related right to consult an attorney prior to making that decision. Indeed, this court prohibits the state from making any reference at trial to a defendant's invocation of those rights. *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997). And even a defendant's apparent choice to waive those constitutional rights and submit to questioning does not mean that the state can rely on those answers to prove its case at trial, because "the state bears the burden of proving a knowing, intelligent, and voluntary waiver under the totality of the circumstances." *Ward*, 367 Or at 191 (internal quotation marks omitted).

We agree with defendant that custodial interrogations may present inherently compelling or even coercive circumstances. But those concerns regarding the need for, and value of, legal advice during custodial interrogation are directly addressed through Article I, section 12. *See Davis*, 350 Or at 454 ("[T]he focus of Article I, section 12, is whether a defendant's testimony was compelled, or, conversely, whether it was voluntarily given."). Specifically, if we extended the limited right identified in *Spencer* to precharging custodial interrogations, the interrogation analog of *Spencer*'s limited right would be the right of a person in custody "upon request to a reasonable opportunity to obtain legal advice before deciding whether to" answer interrogation questions. 305 Or at 74-75.

That right, however, already is encompassed by the right to counsel that is derivative of, or adjunct to, the Article I, section 12, right against self-incrimination. Indeed, the scope of the right to counsel under Article I, section 12, provides greater protection than would be afforded through extending *Spencer*'s "right upon request to a reasonable opportunity to obtain legal advice," because the derivative right to counsel that flows from Article I, section 12, guarantees a person more than a "reasonable opportunity" to obtain legal advice before deciding whether to answer questions.[6] As described above, to "protect that derivative right to counsel, when a suspect in police custody or compelling circumstances asks to speak to a lawyer or have a lawyer's assistance, *all police questioning must cease*." *Turnidge (S059155)*, 359 Or at 400 (emphasis added). And, even if there is ambiguity about whether the suspect is asking to speak to a lawyer, "police are limited to asking follow-up questions to clarify whether the suspect meant to invoke his or her right to counsel." *Id*. We are not prepared to extend *Spencer*'s unique construction of Article I, section 11,

---

[6] The right to counsel under Article I, section 12, also provides greater protection than *Spencer*'s precharging right, because it protects equally all in-custody suspects and requires that questioning "must cease" if the suspect "asks to speak to a lawyer." *Turnidge (S059155)*, 359 Or at 400. By contrast, the limited "reasonable opportunity to consult" explained in *Spencer* realistically protects only those DUII suspects who have ready access to an attorney of their own. *See Spencer*, 305 Or at 74 (emphasizing that the right of DUII suspects "to have reasonable access to legal advice" was distinct from "the state's obligation to provide an indigent suspect with an attorney at the state's expense").

to the context of custodial interrogations when Article I, section 12, already provides a right to counsel in that context.[7]

## B.  *Defendant's Article I, Section 12, Argument*

As just explained, we agree with defendant that, in addition to the right to counsel that applies to post-charging interrogations under Article I, section 11, a derivative right to counsel flows from Article I, section 12, that applies during all custodial or compelling interrogations, including precharging interrogations. Although he now proposes that officers alternatively violated his Article I, section 12, right to counsel, defendant did not argue in the trial court that his confession had been obtained in violation of that right. Indeed, he did not even base his suppression argument on the concept of a valid waiver of rights, which is key to the Article, I, section 12, argument that he now raises. Defendant acknowledges that he is raising that argument for the first time in this court. But defendant, nevertheless, asks this court to affirm the trial court's suppression order as "right for the wrong reason" by holding that officers violated his right to counsel under Article I, section 12, by questioning him about DB without first advising him that "he had counsel ready to represent him and counsel had advised that he not speak about the DB matter without counsel present."

We decline to address that alternative argument. The "right for the wrong reason" principle, as this court has articulated it "permits a reviewing court—as a matter of discretion—to affirm the ruling of a lower court on an alternative basis when certain conditions are met." *Outdoor Media Dimensions, Inc.*, 331 Or at 659. The first condition, and the condition that ultimately is dispositive here, is that, "if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance." *Id*.

The Article I, section 12, argument that defendant raises here is not purely one of law, and the record is not

_____

[7] Our holding resolves defendant's argument that arrest and custodial interrogation, alone, should trigger at least *Spencer*'s limited right to counsel under Article I, section 11. We neither consider nor decide whether a DUII arrest is the only precharging situation to which Article I, section 11, applies.

sufficient to affirm the trial court's suppression order on the proposed alternative basis. As described above, Article I, section 12, guarantees a right to remain silent and entails "a derivative or adjunct right to have the advice of counsel in responding to police questioning." *Ward*, 367 Or at 191 (internal quotation marks omitted). Although a person may waive those Article I, section 12, rights, officers must first ensure that any waiver "is knowing as well as voluntary" by explicitly "inform[ing] a person subjected to custodial interrogation" that they have "a right to remain silent and to consult with counsel and that any statements that the person makes may be used against the person in a criminal prosecution." *Vondehn*, 348 Or at 474. If officers interrogate a suspect without first obtaining a knowing and voluntary waiver, then they violate the suspect's Article I, section 12, rights, and, "[t]o give effect to those constitutional rights, the state is precluded from using, in a criminal prosecution, statements made in response to the interrogation." *Id.*

Defendant does not dispute that officers informed him of his rights using the wording quoted above, but he contends that they were required to provide additional advice in this case to establish that defendant validly waived his Article I, section 12, rights. Specifically, defendant argues that officers were required to inform him—before questioning him about DB—that he was represented by an attorney who had previously invoked his right to silence. Without those additional disclosures by the officers, defendant maintains, the subsequent interrogation violated Article I, section 12.

Defendant's argument is, in part, one of law. We have held that, in some circumstances, officers violated a suspect's Article I, section 12, rights by conducting a custodial interrogation without first informing the suspect that counsel had been retained or appointed on their behalf and had been trying to contact them or assert their rights during the interrogation. *See State v. Joslin*, 332 Or 373, 29 P3d 1112 (2001) (counsel retained by defendant's sister after defendant agreed to accompany an officer to the police station for questioning); *State v. Simonsen*, 319 Or 510, 878 P2d 409 (1994) (counsel appointed by the court after defendant

was taken into custody); *State v. Haynes*, 288 Or 59, 602 P2d 272 (1979) (counsel retained by defendant's wife after defendant was taken into custody). Defendant argues that those cases impose disclosure obligations anytime officers are aware that counsel had invoked the suspect's rights and that the failure of officers to do so means that defendant's waiver of his Article I, section 12, rights was not knowingly, voluntarily, and intelligently made. *See, e.g.*, *Joslin*, 332 Or at 384 ("[S]uch a lawyer may invoke a suspect's right against compelled self-incrimination in the suspect's behalf; if the lawyer does so, then the police either must stop questioning the suspect or must inform the suspect that his or her lawyer has invoked the right and provide the suspect with the opportunity to accept or reject that invocation.").

The state disputes defendant's reliance on those cases as grounds for affirming the trial court. As an initial matter, the state contends that defendant is misreading our case law. According to the state, neither the holding nor the logic of those cases requires disclosure of communications from the lawyer that occurred months prior to custody. In addition, however, the state maintains that defendant's argument depends in part on questions of fact that the evidentiary record does not support. Thus, the state argues, even if defendant were correct on the law, defendant's argument under Article I, section 12, does not meet the first condition that this court has set for affirming a lower court ruling on an alternative basis that was not argued in the lower court. *See Outdoor Media Dimensions, Inc.*, 331 Or at 659 (describing that first condition).

We agree with the state that defendant's Article I, section 12, argument does not meet the first condition that this court has set for reaching—as a matter of discretion—an alternative basis for affirming the trial court's suppression ruling. In explaining what it takes to satisfy that first condition, this court has emphasized that, "even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." *Id*.

at 660 (emphasis in original). Defendant's contention that officers did not mention the attorney or her advice that he remain silent is based on the transcript of the interrogation, which is part of the record. Yet the state insists that, even if the transcript supports defendant's contention, the state might have been able to put on evidence of other communications between the officers and defendant that preceded the interrogation, and thus have created a *different* record regarding the factual questions that underlie defendant's Article I, section 12, waiver argument, had defendant raised that issue in the trial court. We are not called upon to decide whether the state *can* create that record but, rather, whether the state "might have created" that *different* record had defendant raised his Article I, section 12, argument in the trial court. And we are persuaded that it might have.

Thus, we agree with the state that defendant's failure to raise the Article I, section 12, issue fails to satisfy this court's first condition for affirming on the proposed alternative basis. We, therefore, leave any argument that the interrogation violated defendant's rights under Article I, section 12, for the trial court to resolve, if requested, in the first instance.

### III.   CONCLUSION

We reiterate our prior holdings that, once the right to counsel under Article I, section 11, has been triggered by the initiation of a criminal prosecution, the scope of the right is the same for all interrogations relating to the offense— the right to have counsel present, even if the defendant does not ask for counsel to be present. *Craigen*, 370 Or at 707. This court has consistently held that those interrogation-related protections under Article I, section 11, arise with formal charging and continue throughout the duration of the prosecution. Although we have occasionally, in *dicta*, held open the possibility that those interrogation-related protections under Article I, section 11, could arise before formal charging, we reject defendant's argument that his arrest and interrogation triggered a right to counsel under Article I, section 11. In addition, we decline to consider defendant's argument that Article I, section 12, supplies an alternative basis for affirming the trial court, but that ruling is without

prejudice to defendant's ability to raise those arguments on remand.

The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**JAMES, J.**, concurring.

This case has been litigated in a very particular manner, raising a preserved challenge solely under Article I, section 11, of the Oregon Constitution, and raising Article I, section 12, only on appeal, in an unpreserved posture. The attorneys' arguments, which draw clear distinctions between those two constitutional provisions, have, naturally, derived from how we have discussed Article I, section 11, and Article I, section 12, in cases such as *State v. Davis*, 350 Or 440, 442, 256 P3d 1075 (2011). The majority opinion resolves this case within those boundaries, and I concur, both in its explanation of the state of our case law, and its application in this case. I write separately only to express, for myself, the notion that, perhaps, our prior treatment of such constitutional questions has missed something.

In *Davis*, the "[d]efendant retained counsel, who sent a letter to the police invoking defendant's right to remain silent and directing the police to discuss the matter with counsel." 350 Or at 442. The police in *Davis* ignored counsel and obtained incriminating statements from the defendant. In this case, similarly, the police knew that defendant was represented by counsel who had informed them that defendant did not want to answer questions about the investigation without his attorney being present. They ignored that information and interrogated defendant anyway.

We framed the question in *Davis* as "whether the police, in obtaining those incriminating statements from defendant, violated his right against self-incrimination and right to counsel under Article I, sections 12 and 11, respectively, of the Oregon Constitution." *Id*. at 442. Approaching that question in a divide-and-conquer manner, we disposed of the Article I, section 12, challenge by saying that, at the time the incriminating statements were made, the defendant was neither in custody nor compelling circumstances. *Id*. at 460-61. And we disposed of the Article I, section 11,

challenge by saying that, despite the purpose of the right to counsel, it "attaches" only at formal charging, and because the statements were obtained prior to formal charging, the state action was not unconstitutional.

Sometimes our desire in the law to place things into discrete boxes hinders more than it helps. I am reminded of the dissenting words of Justice Stevens who, in *Moran v. Burbine*, 475 US 412, 106 S Ct 1135, 89 L Ed 2d 410 (1986), faced a similar governmental interference with counsel.[1] Dissenting from the majority's conclusion that the police had violated neither the defendant's Fifth nor Sixth Amendment rights to counsel, Justice Stevens explained that the majority's granular approach to resolving the case minimized the importance of those rights:

> "The majority brushes aside the police deception involved in the misinformation of [defendant's] attorney. It is irrelevant to the Fifth Amendment analysis, concludes the majority, because that right is personal; it is irrelevant to the Sixth Amendment analysis, continues the majority, because the Sixth Amendment does not apply until formal adversary proceedings have begun.
>
> "In my view, as a matter of law, the police deception of [defendant's attorney] was tantamount to deception of [defendant] himself. It constituted a violation of [defendant's] right to have an attorney present during the questioning that began shortly thereafter. The existence of that right is undisputed. Whether the source of that right is the Sixth Amendment, the Fifth Amendment, or a combination of the two is of no special importance, for I do not understand the Court to deny the existence of the right."

*Id*. at 462-63.

The attorney is an individual's shield against the government. But, under *Davis*, the state can manipulate

---

[1] In that case, the defendant's sister had retained counsel for the defendant after he had been arrested for burglary. When counsel contacted the police station to inform the officers that she was representing the defendant, she was told that her presence was not needed because her client was not being questioned that night. The officer's assertion was untrue: Less than an hour after the call, the police brought the defendant into an interrogation room and, through several interviews, obtained incriminating statements from the defendant. At no point was the defendant informed of counsel's attempts to contact him and provide representation during those interrogations.

the circumstances to ignore the shield of counsel. Law enforcement—even knowing that an attorney has been retained, and even when the attorney has informed the state that the subject of investigation does not want to make a statement without counsel present—can simply ensure the circumstances of any questioning do not rise to the level previously found by this court to be compelling, thereby escaping Article I, section 12, or delay formal charging, thereby escaping Article I, section 11.

I worry that any framework that we have developed for articulating these fundamental rights that invites mischief and manipulation by the state, is flawed. At a minimum, evidence of intentional manipulation of the circumstances by law enforcement—such as delay in charging to permit interrogation—should justify a departure from *Davis* in a future case, and I do not read the majority as foreclosing that possibility. But on a more fundamental level, much as Justice Breyer noted in dissent in *Texas v. Cobb*, 532 US 162, 177, 121 S Ct 1335, 149 L Ed 2d 321 (2001), when considering whether police may interrogate someone known to the police to be represented by counsel, but on a different case:

> "The majority's rule permits law enforcement officials to question those charged with a crime without first approaching counsel, through the simple device of asking questions about any other related crime not actually charged in the indictment. Thus, the police could ask the individual charged with robbery about, say, the assault of the cashier not yet charged, or about any other uncharged offense (unless under [*Blockburger v. United States*, 284 US 299, 52 S Ct 180, 76 L Ed 306 (1932),] *** it counts as the 'same crime'), all *without notifying counsel*. Indeed, the majority's rule would permit law enforcement officials to question anyone charged with any crime in any one of the examples just given about his or her conduct on the single relevant occasion without notifying counsel unless the prosecutor has charged every possible crime arising out of that same brief course of conduct. What Sixth Amendment sense—what common sense—does such a rule make? What is left of the 'communicate through counsel' rule? The majority's approach is inconsistent with any common understanding of the scope of counsel's representation. It will undermine

the lawyer's role as 'medium' between the defendant and the government."

*Id*. at 177 (emphasis in original).

The method of analysis in *Moran* and *Cobb*, which is replicated in *Davis*, wherein the court cabins rights in such a way that, so defined, no discrete box perfectly fits, and therefore the governmental action falls though the gaps, and is held constitutional by default, strikes me as problematic, and possibly proceeding from a flawed perspective. In particular, it strikes me as being in tension with our state constitution.

As we have said, "the Oregon Constitution represents the fundamental expression of the people regarding the limits on governmental power. And it is the obligation of the courts to ensure that those fundamental principles are followed." *State v. Rodriguez*, 347 Or 46, 79, 217 P3d 659 (2009). The powers of the state are limited and must be bestowed upon it by Oregonians. Accordingly, when considering constitutional challenges to actions by the state, the proper focus is on the action of the state, and whether the state has been given authority for that action, or whether it has exceeded its authority. Methods of analysis that turn to the individual and ask, "why can't the state do this," approach the problem from the wrong starting point. The inquiry begins with the state, and the question, "Why *can* the state do this?"

The methodology of *Moran* and *Cobb*, which asks the individual to identify the specific "box" that secures their right to be free from the governmental action, was tacitly adopted in *Davis* without recognition that the Oregon Constitution does not confer rights upon Oregonians, it confers powers on the state, and *reserves* rights to Oregonians. The various sections of Article I of the Oregon Constitution are but windows through which we observe rights that pre-exist, and sit outside, the constitution; natural rights. *See* Article I, section 1.[2] Such natural rights may be expressed

---

[2] For example, in *State v. Ciancanelli*, 339 Or 282, 306, 121 P3d 613 (2005), we described the natural rights models as follows:

"Although we tend to associate the notion of natural, inalienable rights with the founding of our nation, it is important to note that that idea

across multiple constitutional provisions. Further, there are rights possessed by every Oregonian, rights that limit the power and behavior of the state, that are not explicitly expressed but are nevertheless judicially recognizable and enforceable. *See* Article I, section 33 ("This enumeration of rights, and privileges shall not be construed to impair or deny others retained by the people.").

In *Davis,* when we framed the question presented as "whether the police, in obtaining those incriminating statements from defendant, violated his right against self-incrimination and right to counsel under Article I, sections 12 and 11, respectively, of the Oregon Constitution," we avoided a larger, and more difficult, question: Did the state exceed its limited powers by interfering upon an individual's relationship with legal counsel? In short, is this interference the type of authority Oregonians intended to confer upon the state? Our framing of the question may have foreclosed the possibility that state interference with legal counsel—regardless of whether it occurs pretrial, or after charging; regardless of whether it occurs in compelling circumstances, or in the comfort of one's home—exceeds the limited powers conferred upon the state, thereby infringing on rights retained to the people, either expressed in Article I, section 11, or 12, or expressed or implied through the penumbra between Article I, section 1, section 11, section 12, and section 33.[3]

---

continued as an important legal and political philosophy until the latter part of the nineteenth century. The theory held particular appeal for the Americans participating in the great westward movement, who often had moved west to avoid the constraints of settled society and tended to place an especially high value on individual liberty. Records of the constitutional conventions of pioneer states are replete with affirmations of the natural rights theory, and many of those states adopted constitutional provisions or preambles expressly declaring the 'inalienable natural rights' of man."

We then noted that, at least one of Oregon's most defining independent state constitutional interpretations—*State v. Robertson*, 293 Or 402, 649 P2d 569 (1982)—tacks closely to the natural rights model. *Ciancanelli*, 339 Or at 306 ("[T]he *Robertson* approach appears to be largely, if not entirely, compatible with the pure 'natural rights' approach that we have described.").

[3] In *Moran*, Justice Stevens noted that in his judgment, "police interference in the attorney-client relationship is the type of governmental misconduct on a matter of central importance to the administration of justice that the Due Process Clause prohibits." 475 US 412 at 467 (Stevens, J., dissenting). As is well known, Oregon's constitution lacks a Due Process clause. But,

In *Moran*, Justice Stevens wrote:

"In my judgment, it blinks at reality to suggest that misinformation which prevented the presence of an attorney has no bearing on the protection and effectuation of the right to counsel in custodial interrogation. The majority parses the role of attorney and suspect so narrowly that the deception of the attorney is of no constitutional significance. In other contexts, however, the Court does not hesitate to recognize an identity between the interest of attorney and accused. The character of the attorney-client relationship requires rejection of the Court's notion that the attorney is some entirely distinct, completely severable entity and that deception of the attorney is irrelevant to the right of counsel in custodial interrogation."

475 US 412 at 463-64 (Stevens, J., dissenting). I find myself, too, blinking at reality. In parsing the right to counsel into the discrete boxes of Article I, section 11 and Article I, section 12, in such a way as to permit the interference with counsel permissible under *Davis*, I wonder if we have missed the point.

Despite these concerns, based on the way this case has been litigated and our existing case law, I respectfully concur.

---

"[i]f a state constitution lacks a due process clause, and if we follow [former Oregon Supreme Court Justice Hans] Linde and consider state constitutional arguments before turning to the Federal Due Process Clause, how should a state court approach broad constitutional challenges to state laws or policies? One answer, driven by Linde's suggestion that courts actually consider the text—the whole text—of their state constitutions, is for litigants and state courts to focus on the narrower and sometimes forgotten provisions that hide in dark corners of many state constitutions."

Thomas A. Balmer, *Does Oregon's Constitution Need a Due Process Clause? Thoughts on Due Process and Other Limitations on State Action*, 91 Wash L Rev Online 157, 165 (2016).